STATE of Wisconsin, Plaintiff-Respondent,

v.

Urban A. HUBERT, Defendant-Appellant.†

Court of Appeals

*No. 93–0655–CR. Submitted on briefs October 14, 1993.—Decided December 22, 1993.*

(Also reported in 510 N.W.2d 799.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Matthew H. Huppertz* of *Carlson & Huppertz, S.C.* of Waukesha

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William L. Gansner*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   Urban A. Hubert appeals from a judgment of conviction for one count of arson pursuant to sec. 943.02(1)(a), Stats., and three counts of recklessly endangering safety pursuant to sec. 941.30(1), Stats. Hubert also appeals from an order denying his motion for postconviction relief. On appeal, Hubert claims that his trial counsel was ineffective by failing to move for a mistrial based upon the presence of numerous uniformed firefighters in the courtroom during the jury trial and by failing to adequately investigate the source of the fire. As a separate issue, Hubert challenges his sentence, arguing that certain other uncharged arson offenses were not adequately proven.

We conclude that Hubert's trial counsel was not ineffective and that the trial court did not misuse its discretion when sentencing Hubert. We therefore affirm the judgment of conviction and the postconviction order.

## FACTS

Although Hubert does not challenge the sufficiency of the evidence, we recite the relevant facts to

337

provide a backdrop to the appellate issues. Hubert's convictions stem from a September 27, 1991 fire in a rooming house in Menasha. At the time, Hubert was suspected in a host of arson incidents in the Fox Valley area. As a result, Hubert was under surveillance by a multicommunity arson task force involving firefighters from thirteen agencies in the Fox Valley area.

Richard Relien, assistant chief of the city of Neenah fire department, was on the surveillance team during the early morning hours of September 27 when he saw Hubert leave Frankie's Lounge in Menasha and walk down the street. Relien next saw Hubert a few minutes later on the roof of the building at 192 Main Street, the address adjacent to the location of the subsequent fire. Hubert appeared to be trying to force open a window which did not open. Hubert then moved to a porch area where he pushed on a back door which also did not open.

Another member of the surveillance team and a citizen witness testified that they then saw Hubert enter the front door of 196½ Main Street, the site of the ensuing fire. Hubert left the building a few minutes later. After Hubert left, another task force member smelled smoke. Relien entered the back area of the building and found a pile of rags on fire in the bathroom area. Relien testified that if the fire had not been discovered and extinguished quickly, it would have been out of control in another two minutes. Three of the house residents were asleep in their rooms at the time of the fire.

Based upon this evidence, the state charged Hubert with arson and three counts of reckless endangerment. Numerous uniformed firefighters attended the two-day jury trial, sitting near each other in the spectator section of the courtroom. At the postconvic-

tion motion hearing, estimates of the number of uniformed firefighters present at trial varied widely, ranging from ten to approximately twenty-five.

We will recite additional facts as they become relevant to our discussion of the appellate issues.

## I. Ineffective Assistance of Counsel

### A. The Law

The two elements necessary to establish ineffective assistance of counsel are deficient performance by counsel and prejudice to the defendant. *State v. Schambow*, 176 Wis. 2d 286, 301, 500 N.W.2d 362, 368 (Ct. App. 1993). We take this opportunity to restate and to emphasize what is often overlooked in many ineffective assistance of counsel discussions: the test for measuring an attorney's performance is the *reasonableness* of counsel's challenged conduct on the particular facts of the case, viewed as of the time of counsel's conduct. *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 636, 369 N.W.2d 711, 716 (1985). Stated differently but to the same effect is the Supreme Court's statement in *Strickland* that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.

When reviewing an ineffective assistance of counsel claim, we pay deference to a trial court's findings of fact under the clearly erroneous standard of review as to what the attorney did or did not do. *See Schambow*, 176 Wis. 2d at 301, 500 N.W.2d at 368. However, the ultimate determination of whether counsel's perform-

ance was deficient and prejudicial to the defendant is a question of law which this court reviews independently. *Id.* We also indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With this test in mind, we now turn to Hubert's ineffective assistance of counsel claims.

### B. Uniformed Firefighters as Spectators at the Jury Trial

Hubert argues that his trial counsel was ineffective because he failed to move for a mistrial based on the attendance of the uniformed firefighters as spectators during the jury trial. More precisely, Hubert rests his challenge on trial counsel's admission at the post-conviction hearing that he was unaware of certain case law which holds that the presence of spectators with distinguishing dress or adornments in view of the jury can introduce impermissible factors into the proceedings.

The case law to which Hubert alludes is *Norris v. Risley*, 918 F.2d 828, 830 (9th Cir. 1990), and *Holbrook v. Flynn*, 475 U.S. 560 (1986). In *Norris*, the Ninth Circuit held, in a kidnapping/rape proceeding, that the presence of spectators wearing buttons inscribed "Women Against Rape" brought an impermissible factor into play which posed an unacceptable risk of prejudice. *Norris*, 918 F.2d at 830-31. In *Holbrook*, the United States Supreme Court rejected a claim that the presence of four armed guards sitting behind the defendant was prejudicial. *Holbrook*, 475 U.S. at 571-72. However, the *Holbrook* Court cautioned that claims of prejudice due to the influence of impermissible factors must be viewed on a case-by-case basis. *Id.*

■ We do not conclude that trial counsel's unawareness of the *Norris* and *Holbrook* decisions constitutes deficient performance under the facts of this case.[1] We would hold defense attorneys to an impossible burden were we to require total and complete knowledge of all aspects of reported criminal law, no matter how obscure. Thus, we conclude that counsel's unawareness of this narrow slice of law was reasonable and understandable.[2]

Next we consider whether trial counsel was ineffective in failing to move for a mistrial based on the attendance of the uniformed firefighters, despite counsel's unawareness of the *Norris* and *Holbrook* decisions.[3] On this point, we choose to move directly to the prejudice prong of the analysis. *See State v. Kuhn,*

---

[1] There are, of course, instances where an attorney's unawareness of a body of law can constitute prejudicial ineffective assistance of counsel where the result is the failure to pursue a viable theory of defense. *See, e.g., State v. Felton,* 110 Wis. 2d 485, 504, 329 N.W.2d 161, 170 (1983). Here, however, trial counsel's unawareness of the *Norris* and *Holbrook* decisions had no effect on the selection or pursuit of a theory of defense. Nor, as we will later explain, did it work any deleterious effect on Hubert's defense.

[2] We note that the trial court and the prosecutor also expressed their unawareness of these decisions.

[3] We are uncertain whether Hubert raises this precise issue. As we have noted, the gravamen of Hubert's complaint is that his trial counsel was unaware of case law which would have supported a motion for a mistrial or to exclude the spectators. We are not so certain that Hubert is additionally claiming that his counsel was ineffective for failing to bring a motion to exclude the uniformed firefighters from the courtroom or for a mistrial, regardless of counsel's lack of knowledge of the law in support. We address this possible claim nonetheless.

341

178 Wis. 2d 428, 438, 504 N.W.2d 405, 410 (Ct. App. 1993). (If we conclude on a threshold basis that the defendant could not have been prejudiced by counsel's performance, we need not address whether such performance was deficient.)

On this issue, we note that the trial court observed that the firefighters' presence actually bolstered Hubert's defense theory that the task force was over-zealous and frustrated, bent on convicting Hubert by using exaggerated evidence. Viewed in this light, the failure of counsel to object (even in the face of his unawareness of *Norris* and *Holbrook*) worked no prejudice to Hubert because the presence of the uniformed firefighters supported the strategic theory of defense.[4]

## C. Failure to Investigate

Hubert next contends that his trial counsel failed to adequately investigate the source of the fire. More specifically, Hubert argues that his counsel should have hired an expert to examine the fire scene.

---

[4] Hubert challenges the trial court's statement that the uniformed firefighters' presence supported defense counsel's theory of defense. Hubert asks rhetorically, "How can the defense strategy be strengthened' when trial counsel does not know about it?" Hubert misses the point of the trial court's remark. Obviously, trial counsel did not know before trial that the uniformed officers would be present and such could not have been part of the defense strategy. However, counsel's challenge to the surveillance team's motives and tactics was part of the defense trial strategy. Given this line of defense, we do not find it remarkable that defense counsel did not register an objection or move for a mistrial based upon the firefighters' attendance as spectators.

Prior to trial when exploring possible defenses, trial counsel considered defending on the theory that the fire had been accidently started by one of the rooming house tenants who was discovered by Relien the night of the fire in an intoxicated state in the bathroom area. However, the crime lab report and the preliminary hearing testimony of a deputy fire marshall both reported that no accelerants were found at the scene. Nonetheless, trial counsel telephoned an arson expert, conveying this information and inquiring whether the expert could assist the defense. The expert responded, however, that he could not be of assistance to the defense. Thus, trial counsel did not further pursue the matter.

At the postconviction hearing, Hubert presented an expert who testified that when examining the fire debris he found remnants of a match. He also testified that a fire could have been started by dropping a match onto the terry cloth rags.

Hubert argues that trial counsel failed to adequately investigate by not engaging an expert to examine the fire debris. He assumes that had counsel done so, the expert would have discovered the same evidence uncovered by Hubert's expert, who testified at the postconviction proceeding,[5] and that such evidence would then have bolstered a theory of defense that the intoxicated tenant started the fire.

Examined more closely, Hubert's true complaint is not that trial counsel did not investigate but that he did not investigate enough to find the right expert. However, *Strickland* holds that trial counsel's duty is:

---

[5] We question this assumption given that the match was not discovered by the state's investigation.

to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 691.

Here, trial counsel did consider a theory of defense that another person had started the fire. However, the crime lab report and the preliminary hearing testimony did not directly support this theory because no accelerants were found at the scene.[6] Nonetheless, counsel contacted an expert and shared this information. This inquiry, however, did not produce any viable theory of defense. Based on these efforts and their unproductive results, the trial court concluded that trial counsel reasonably decided to pursue a different theory of defense—one which challenged the motives and evidence of the surveillance team.

██

The trial court's conclusion is supported by trial counsel's testimony at the postconviction hearing. Counsel testified that, in his judgment, it was better strategy to pursue a stronger theory of defense and to abandon a weaker one which, if pursued, would undermine his and Hubert's credibility with the jury. Viewed as of the time of counsel's conduct, as we must pursuant to *Strickland*, we agree with this strategic decision of counsel. We affirm the trial court's ruling that trial counsel acted reasonably and was not ineffective.

---

[6] For the same reason, this information did not directly support any claim of arson against Hubert. At best, this information supported a claim that the fire was started without use of an accelerant.

## II. Sentencing

Next, Hubert argues that the trial court abused its discretion in considering uncharged offenses during the sentencing process.

Initially, Hubert was a suspect in approximately 200 fires in the Fox Valley area. Ultimately, the state presented the trial court with a list of thirty fires in which it believed Hubert was involved. The trial court further refined this list to eleven offenses which the court found to be supported by an adequate factual basis and which the court then considered when sentencing Hubert.

Hubert's appellate argument hinges on his request that we adopt a formal burden of proof requirement for factual findings which impact on a sentencing. Hubert urges us to follow the approach of certain federal jurisdictions. *See, e.g., United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991) (approving the preponderance of the evidence burden); *United States v. Kikumura*, 918 F.2d 1084, 1102 (3d Cir. 1990) (adopting the clear and convincing burden as to a sentencing factor which works an extreme effect on the sentence).

We decline Hubert's invitation to fix a specific burden of proof as to "other acts" which bear upon a sentencing. We are satisfied that the present law which places all sentencing under the standard of judicial discretion remains the more practical and workable rule for both the trial court when imposing a sentence and the appellate court when reviewing a sentence.

Hubert does not appear to challenge his sentence beyond the burden of proof issue we have just discussed. Nonetheless, we observe that the trial court engaged in a sifting and winnowing process which eliminated many of the state's other acts offenses. The

court rejected some of the offenses because they were based on "suspicion, rumor and gossip" and others because they were not supported by sufficient reliable facts.

Moreover, Hubert was provided with a list of the read-in offenses and the underlying reports related to them. The trial court adjourned the sentencing hearing to allow Hubert additional time to investigate and to interview witnesses related to these offenses. At the sentencing hearing, Hubert was given an opportunity to rebut the uncharged offenses, to challenge the credibility of those reporting the offenses and to explain his version of the incidents. Hubert, however, offered no countervailing evidence or information regarding these matters.

■■■■■

The Wisconsin Supreme Court has held that the responsibility of the sentencing court is to acquire *full* knowledge of the character and behavior of the convicted defendant before sentence is imposed. *Elias v. State*, 93 Wis. 2d 278, 285, 286 N.W.2d 559, 562 (1980). "[T]he trial court in imposing sentence for one crime can consider other unproven offenses, since those other offenses are evidence of a pattern of behavior which is an index of the defendant's character, a critical factor in sentencing." *Id.* at 284, 286 N.W.2d at 562. In addition to uncharged and unproven offenses, the court may consider pending charges for which there has been no conviction. *Id.* The procedure employed by the trial court in this case assured that the uncharged offenses which the court considered were truly relevant to Hubert's character. The court scrupulously protected Hubert's rights in this process. We conclude the court did not misuse its discretion by considering the eleven uncharged offenses when sentencing Hubert.

*By the Court.*—Judgment and order affirmed.