STATE of Wisconsin, Plaintiff-Respondent,

v.

Nathaniel A. LINDELL, Defendant-Appellant.†

Court of Appeals

*No. 99–2704–CR. Submitted on briefs May 19, 2000.—Decided July 27, 2000.*

## 2000 WI App 180

(Also reported in 617 N.W.2d 500.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy J. Gaskell* of *Hanson & Gaskell* of Westby.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Diane M. Welsh*, assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1. ROGGENSACK, J. Nathaniel A. Lindell appeals his convictions for first-degree intentional homicide, arson and burglary, all as party to a crime, and the denial of his motion for postconviction relief. He claims that the circuit court erred in not striking a juror for cause who admitted that: (1) she had known the homicide victim for over twenty years; (2) the victim was a close personal friend of her family; (3) she had attended the victim's funeral; and (4) she had regular contact with the victim when she worked at her parents' tavern. Lindell also claims the circuit court erred in concluding that he had not been denied effective assistance of counsel. Because we conclude that the juror was neither subjectively or objectively biased and that Lindell was not denied effective assistance of counsel, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 2. Donald Harmacek was found dead in his home after his house had been burglarized and set on fire. Lindell was charged as a party to the crime for his

alleged involvement. At the time of jury selection, prospective jurors were asked whether they knew Shirley Otto, a long-time companion of Harmacek. Juror D.F. responded that she had "known Shirley and Donny [the victim] for about twenty years." When asked to elaborate about her relationship with the victim, D.F. responded that they were "[c]lose friends, just friends, you know, over the years." She said that Harmacek had been the beer distributor for her parents' tavern for forty-seven years.

¶ 3. Defense counsel also asked D.F. how much contact she had with either Otto or Harmacek. She responded "[n]one really with Shirley other than knowing her. Donny, you know, when he made our deliveries three times a week." When asked whether she ever socialized with Harmacek, D.F. said that her parents knew him very well and that he would come into her parents' establishment every morning for breakfast. Additionally, D.F. stated that she saw him about three times a week, when he made beer deliveries to her parents' tavern. Defense counsel also asked D.F. if she had talked about his death with her family. D.F. stated that she had and it was hard because she and her family had known Harmacek for so many years. D.F. also explained that she had lost her own father the year before, so Harmacek's death was especially difficult.

¶ 4. Defense counsel also asked D.F. about pretrial publicity. D.F. said that she had read many of the newspaper articles about the case and had discussed them with her mother, with whom she has lived since the death of her father. When asked whether she had discussed the case with Otto, D.F. responded "No. We run (sic) into her a couple weeks ago on the elevator, and that's the first time we'd seen her since this happened other than the funeral home that night." The

defense counsel and the court each asked D.F. whether she thought she could fairly and impartially decide the case based upon the evidence adduced at trial, to which she responded that she believed she could.

¶ 5. Defense counsel moved to strike D.F. for cause. The circuit court denied the motion, stating that D.F. had promised to fairly and impartially decide the case. Lindell subsequently used one of his peremptory challenges to remove D.F. from the jury.

¶ 6. After the jury returned a guilty verdict on all counts, Lindell brought a postconviction motion seeking a new trial on the grounds that D.F. should have been struck for cause. Lindell also argued that his trial counsel was ineffective for failing to introduce impeachment evidence relating to one of the State's witnesses. The court denied the motion and Lindell appeals.

## DISCUSSION

**Standard of Review.**

¶ 7. A circuit court's determination that a juror is not subjectively biased is a factual finding that will be upheld unless clearly erroneous. *See State v. Theodore Oswald*, 2000 WI App 2, ¶ 19, 232 Wis. 2d 62, 606 N.W.2d 207, *cert. denied*, 120 S. Ct. 2757 (2000). Whether a juror is objectively biased, however, presents a mixed question of fact and law. *See State v. Faucher*, 227 Wis. 2d 700, 720, 596 N.W.2d 770, 779 (1999). A circuit court's findings of fact will be upheld unless they are clearly erroneous. *See* WIS. STAT.

§ 805.17(2) (1997–98).[1] However, whether those facts fulfill the legal standard of objective bias is a question of law that this court reviews *de novo. See Faucher*, 227 Wis. 2d at 720, 596 N.W.2d at 779. Nevertheless, the supreme court has directed that we may reverse a circuit court's determination of objective bias only if, as a matter of law, a reasonable judge could not have reached the conclusion that the circuit court reached.[2] *See id.* at 721, 596 N.W.2d at 779–80. However, notwithstanding the deference given to a circuit court's determination about an individual juror's objective bias, a "circuit court's determination that a group of people with similar characteristics is objectively biased is a question of law that we review *de novo." State v. Mendoza*, 227 Wis. 2d 838, 850, 596 N.W.2d 736, 743 (1999).

¶ 8. In regard to our review of an ineffective assistance of counsel claim, we examine a circuit court's findings of fact concerning the circumstances of the case and counsel's conduct and strategy under the clearly erroneous standard. However, whether counsel's performance was defective and whether the defective performance was prejudicial are questions of law, which we review *de novo. See State v. Hubert*, 181

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] A different standard of review could lead to a different result in a close case. However, we do not consider whether a *de novo* standard of review would produce a different result here because *State v. Faucher*, 227 Wis. 2d 700, 720–21, 596 N.W.2d 770, 779–80 (1999), is clear that we are to give weight to the trial court's conclusion that a prospective juror is or is not objectively biased.

Wis. 2d 333, 339–40, 510 N.W.2d 799, 801–02 (Ct. App. 1993).

**Juror Bias.**

¶ 9. The United States Constitution and the Wisconsin Constitution guarantee a criminal defendant the right to a trial by an impartial jury. *See* U.S. CONST. amend. VI; WIS. CONST. art. I, § 7. A juror who "has expressed or formed any opinion, or is aware of any bias or prejudice in the case" should be removed from the panel. WIS. STAT. § 805.08(1); *see also* WIS. STAT. § 972.01. Additionally, "[i]f a juror is not indifferent in the case, the juror shall be excused." Section 805.08(1).

¶ 10. In *Faucher*, 227 Wis. 2d at 716, 596 N.W.2d at 777, the supreme court clarified the terminology to be used when examining juror bias. It has directed that a prospective juror is biased and therefore should be removed for cause if the juror is (1) statutorily biased, (2) subjectively biased or (3) objectively biased. *See Theodore Oswald*, 2000 WI App 2 at ¶ 17. A juror is statutorily biased if the juror is related by blood or marriage to any party or any attorney appearing in the case or if the juror has a financial interest in the case. *See* WIS. STAT. § 805.08(1). Neither party contends that D.F. was statutorily biased. Accordingly, we focus upon whether D.F. was subjectively or objectively biased such that she should have been stricken from the jury for cause.

*1. Subjective Bias.*

¶ 11. Subjective bias "inquires whether the record reflects that the juror is a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the juror might have." *State v. Kiernan,*

227 Wis. 2d 736, 745, 596 N.W.2d 760, 764 (1999). Often, subjective bias will be revealed only through the prospective juror's demeanor because it refers to that juror's state of mind. *See Faucher*, 227 Wis. 2d at 717, 596 N.W.2d at 778. Therefore, a circuit court is in a better position to determine subjective bias than an appellate court because the determination involves an assessment of the juror's honesty and credibility. *See id.* at 717–18, 596 N.W.2d at 778.

¶ 12. Here, the circuit court concluded that D.F. was not subjectively biased. When asked whether she could listen to all the evidence and make a fair determination, D.F. responded, "Yes, I think I could." Additionally, D.F. was asked several times about whether she would listen to the evidence fairly and impartially, and she never said that she would not. The circuit court stated D.F. was not evasive in any way, answered all of the questions put to her, and was honest and fair in her answers. Further, it stated that "[i]t's clear from her demeanor that she searched her soul and answered fairly and that she could fairly and impartially decide this case." Given the circuit court's superior position in assessing a prospective juror's honesty and credibility, we conclude that the court's determination that D.F. was not subjectively biased is not clearly erroneous.

### 2. Objective Bias.

¶ 13. Objective bias, on the other hand, does not focus on the prospective juror's state of mind. *See id.* at 718, 596 N.W.2d at 779. Whether a particular juror is objectively biased depends on the facts and circumstances surrounding *voir dire* and the facts involved in the case. *See id.* A juror who is acquainted with a wit-

ness or who has a predisposition for or against a critical issue in the case may be struck as objectively biased only if there is "a direct, critical, personal connection between the individual juror and crucial evidence or a dispositive issue in the case to be tried or the juror [has an] intractable negative attitude toward the justice system in general." *State v. James Oswald*, 2000 WI App 3, ¶ 8, 232 Wis. 2d 103, 606 N.W.2d 238, *cert. denied*, 120 S. Ct. 2757 (2000); *see also Kiernan*, 227 Wis. 2d at 751, 596 N.W.2d at 767.

¶ 14. For example, in *Faucher*, a prospective juror was acquainted with a key witness for the State and expressed a firm opinion that the witness was a person of integrity who would not lie. *See Faucher*, 227 Wis. 2d at 708, 596 N.W.2d at 774. Although the supreme court upheld the circuit court's determination that the juror was not subjectively biased, the court concluded that the juror was objectively biased because "a reasonable person in [the juror's] position could not set the opinion aside despite the best of intentions to do so." *See id.* at 733, 596 N.W.2d at 785. Objective bias was also manifest in *Kiernan*, where several veteran jurors had rejected the identical defense of the defendant in an earlier trial, *i.e.*, that breathalyzer readings could be inaccurately high when the subject had an object in his mouth. *See Kiernan*, 227 Wis. 2d at 750, 596 N.W.2d at 767.[3]

---

[3] Although the United States Constitution requires an impartial jury, the United States Supreme Court has never specifically adopted objective bias as a means of achieving that right. *See Smith v. Phillips*, 455 U.S. 209, 221–24 (1982) (Justice O'Connor concurring to assert that implied bias (the United States Supreme Court's designation for objective bias) should not be discarded as an option for the disqualification of certain types of jurors).

¶ 15. In contrast, the supreme court determined that a prospective juror was not objectively biased in *State v. Erickson*, 227 Wis. 2d 758, 596 N.W.2d 749 (1999), *cert. denied*, 120 S. Ct. 987 (2000). There, a prospective juror in a sexual assault case had been a victim of sexual abuse as a child. Unlike the prospective juror in *Faucher*, this juror had no direct, personal relationship with any critical evidence or issue involved in the case. Additionally, her sexual assault was remote in time, lessening the chance that it would taint her judgment. *See id.* at 763 n.5, 596 N.W.2d at 753 n.5.

¶ 16. We begin our analysis of whether D.F. was objectively biased by noting that concerns for objective bias bear on public trust and confidence in the judicial system; accordingly, we attempt to avoid even the appearance of bias in a jury member. *See Mendoza*, 227 Wis. 2d at 847, 596 N.W.2d at 741 (citing *State v. Louis*, 156 Wis. 2d 470, 478, 457 N.W.2d 484, 488 (1990)). Therefore, a juror must be struck if retaining the juror would give the appearance that the defendant could not have a fair trial. *See id.*

¶ 17. There is no published Wisconsin appellate case where the relationship of the victim to a juror is central to a challenge for cause grounded on objective bias. However, the test that has been established for evaluating claims of objective bias when the prospective juror has a connection to a witness or a critical issue in the case provides us with a starting point. *See James Oswald*, 2000 WI App 3 ¶ 8–13. Therefore, we shall consider whether D.F. has a direct, critical, personal connection to crucial evidence or a dispositive issue, or has an intractable negative attitude toward the justice system in general. However, because a juror's relationship to the victim may be of such a

nature as to taint a reasonable juror's ability to rationally consider all the evidence presented at trial, we shall also consider whether the juror's relationship with the victim is so close that as a matter of law no reasonable person in the position of the juror would be "indifferent in the case" as is required by WIS. STAT. § 805.08(1).[4]

¶ 18. Here, D.F.'s *voir dire* revealed that: (1) she had known Harmacek, whom she repeatedly referred to as "Donny," for about twenty years; (2) the victim had been the beer distributor for her parents' tavern for forty-seven years; (3) the victim had eaten breakfast at her parents' establishment daily; (4) when she worked for her parents' tavern, she had had contact with Harmacek approximately three times a week when he delivered beer to the tavern; (5) she had talked about the case with her mother; (6) she had attended the funeral[5] of the victim with her mother; (7) her parents had socialized with Harmacek; and (8) Harmacek's death was difficult for D.F. because her own father had passed away the year before. However, D.F. repeatedly maintained that she could set aside her

[4] For example, if the mother of the child whom a defendant had been charged with murdering were a prospective juror, that close relationship with the victim would prevent a reasonable person in the juror's position from being unbiased. *See State v. Gesch*, 167 Wis. 2d 660, 667, 482 N.W.2d 99, 102 (1992) (where a prospective juror is related to a witness by blood or marriage to the third degree, even though no actual bias may exist, the risk of objective bias requires exclusion of the juror).

[5] The State points out in its brief that it is unclear whether D.F. attended the funeral or the visitation of Harmacek. However, it is clear she attended a function for Harmacek's death that took place at a funeral home.

434

relationship with Harmacek and view the evidence impartially.

¶ 19. While Lindell has offered many facts which he asserts warranted removal of D.F. from the jury, he has described no direct connection between D.F. and any crucial evidence, dispositive issue or negative attitude toward the justice system. Harmacek could not testify, so his credibility was not at issue, nor would his testimony be weighed against any evidence the defense proffered. And, D.F.'s acquaintance with Otto, Harmacek's girlfriend, was minimal. Additionally, Harmacek's actions were not at issue in that Lindell was not claiming self-defense. Therefore, her relationship to the victim did not make her more or less willing to accept the defense theory of the case: that Lindell was not there when Harmacek was killed. The only factor about her acquaintance with Harmacek that defense argued affected the case was that it may have caused her to be more emotional, thereby decreasing her ability to view all the evidence objectively. However, the question of a juror's personal emotional involvement with a case bears on subjective bias, not objective bias, and the circuit court found D.F. was not subjectively biased after it had specifically considered defense counsel's assertion that she was "teary-eyed" during *voir dire*. Additionally, while D.F. had known Harmacek for a number of years, he was not related to her by blood or marriage, and there was no testimony that she had an exceptionally close personal relationship with him. Rather, he was a business colleague and social friend of her parents. Therefore, we conclude that a reasonable circuit court could have determined that D.F. did not have a personal connection to crucial evidence, a dispositive issue in the case, a negative

attitude toward the justice system in general, or so close a personal relationship to Harmacek that, as a matter of law, no reasonable person in D.F.'s position could have been impartial. Accordingly, we conclude it did not err in determining that D.F. was not objectively biased.

**Ineffective Assistance.**

¶ 20. The right to counsel guaranteed a criminal defendant is the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 (1970). To prevail on an ineffective assistance of counsel claim, an appellant must show that counsel's performance was deficient and that that deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hubert*, 181 Wis. 2d at 339–40, 510 N.W.2d at 801–02. The burden of proof of ineffective assistance of counsel is on the appellant. *See State v. Smith*, 207 Wis. 2d 258, 273, 558 N.W.2d 379, 386 (1997). The test for deficient performance is whether counsel's representation fell below the representation that a reasonably effective attorney would provide. *See Strickland*, 466 U.S. at 688. In regard to prejudice, an appellant must prove that counsel's deficiency of performance was so substantial and serious that but for this inadequate representation the result of the trial would have been different. *See id.* at 694. An appellant must prevail on both prongs of the *Strickland* test to obtain relief. *See State v. Wirts*, 176 Wis. 2d 174, 180, 500 N.W.2d 317, 318 (Ct. App. 1993).

¶ 21. Lindell's ineffective assistance of counsel claim arises out of the cross-examination of Robert Hanson, a witness for the prosecution, which cross-examination Lindell claims was deficient and prejudicial. Hanson's testimony was important because, aside

from the statements of the co-perpetrators in this crime, it provided the only inculpatory statements attributed to Lindell. Hanson's testimony purported to relate that while he was incarcerated with Lindell at the La Crosse county jail, Lindell allegedly told him of his involvement in the burglary, arson and homicide of Harmacek. Lindell, who attempted to show Hanson was not a credible witness, claimed he had learned that Hanson had approached another inmate about making an arrangement with the State that was favorable to the inmate and Hanson if the other inmate would provide testimony implicating Lindell in Harmacek's murder. Defense counsel attempted to impeach Hanson with this information, and the State objected based on a failure to give notice of the use of other acts evidence. The circuit court sustained the objection[6] after a hearing out of the presence of the jury and invited defense counsel to reapproach the issue at a latter time. Counsel did not do so.

¶ 22. At the *Machner*[7] hearing, the court found that defense counsel had made a strategic decision not to pursue the admission of this impeachment evidence against Hanson because the element of surprise had been eliminated. That finding is not clearly erroneous. Additionally, Hanson's credibility was of limited value, as he had an extensive record. Furthermore, the evidence of Lindell's guilt was overwhelming. For example, Todd Gass testified that he was approached by Lindell about participating with him in the burglary and using walkie-talkies before the burglary occurred.

---

.[6] We do not reach the issue of whether this ruling by the circuit court was correct, as it is unnecessary to our decision.

[7] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

437

Charles Schaub testified that Lindell purchased three communication radios from his store shortly before the burglary. Josh Lindell (the defendant's brother) and Marcus Mitchell testified that Mitchell agreed to serve as the look-out for the burglary while both Nathaniel and Josh Lindell went inside the Harmacek residence. Harmacek collected coins, and Lindell's roommate, Casey Castona, testified that after the date of the burglary Lindell had some rare coins that he was trying to sell. Therefore, we conclude that even if we were to assume, *arguendo*, that trial counsel's performance were deficient, that deficiency was not prejudicial. Accordingly, Lindell was not denied effective assistance of counsel.

## CONCLUSION

¶ 23. Because we conclude that the circuit court did not err in determining that D.F. was neither subjectively nor objectively biased, we affirm the circuit court's denial of Lindell's motion to strike her for cause. We also conclude that Lindell was not denied effective assistance of counsel. Therefore, we affirm the judgment of the circuit court.[8]

*By the Court.*—Judgment and order affirmed.

---

[8] Lindell also asks us to reverse his conviction pursuant to our discretionary authority under WIS. STAT. § 752.35. His request occurs in the conclusion section of his brief, is one paragraph long and cites to no legal authority. We do not address the merits of his argument because it was undeveloped by legal reasoning. *See Truttschel v. Martin*, 208 Wis. 2d 361, 369, 560 N.W.2d 315, 319 (Ct. App. 1997).