**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 18, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2024AP196-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2021CF279

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JOHN R. WALTON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Wood County: NICHOLAS J. BRAZEAU, JR., Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. John Walton appeals a judgment of conviction entered in the circuit court of Wood County following his pleas of guilty to five

counts of possession of child pornography.  Walton argues that the court erred in sentencing him to a total of 20 years of initial confinement in prison and 30 years of supervised release.  Specifically, Walton contends that the sentencing court erroneously exercised its discretion in three ways: by placing too much weight on Walton's conduct as reflected in charges that were read in at sentencing, which alleged that Walton sexually assaulted a child on multiple occasions between 1990 and 1992; by placing too little weight on information provided in a pre-sentencing investigation report submitted by the defense; and by purportedly failing to provide reasoning supporting the court's decision to impose consecutive sentences for the child pornography counts.

¶2    Walton also argues that, given his relatively advanced age of 82 at the time of sentencing, the sentence amounts to a life sentence that violates the constitutional protection against cruel and unusual punishment because it is disproportionately harsh relative to the seriousness of the offenses of conviction.

¶3    We conclude that none of Walton's arguments call for reversal.

## BACKGROUND

¶4    In April 2021, Walton was charged with ten counts of possession of child pornography in violation of WIS. STAT. § 948.12(1m).[1]  This was based on images found by law enforcement in March 2021 on an electronic device that belonged to Walton.  Several months later, a separate criminal case was commenced against Walton, charging him with ten counts of first-degree sexual assault of a child in violation of WIS. STAT. § 948.02(1), for conduct that allegedly

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

occurred from 1990 to 1992. The second case was based on allegations by A.B. that he had sexually assaulted her on multiple occasions when she was approximately eight and nine years old.[2]

¶5 Walton entered a plea deal with the State that included the following features. Walton pled guilty to five counts of possession of child pornography. The State dismissed five counts of child pornography. All ten of the first-degree sexual assault charges in the separate case were dismissed but read-in for purposes of sentencing.

¶6 Before sentencing, the defense submitted to the circuit court a report by a private firm providing its assessment of Walton's background and character. We refer to this report as "the defense PSI." *See State v. Greve*, 2004 WI 69, ¶¶1 n.2, 10-12, 272 Wis. 2d 444, 681 N.W.2d 479 (distinguishing between presentence investigations prepared by the state department of corrections consistent with WIS. STAT. § 972.15 and presentence reports obtained and submitted to the court by defense counsel).

¶7 The defense PSI stated the following in pertinent part. In 2021, A.B. gave statements to the Wood County Sheriff's Department describing sexual assaults by Walton in the early 1990s. A.B. alleged that Walton had touched her vagina over and under her clothing and at times had digitally penetrated her vagina. A.B. had given an account along the same lines to a school counselor near in time to the alleged assaults, leading to an investigation by Wood County Human Services. These allegations were categorized as "unsubstantiated" by that

---

[2] To protect the privacy of the victim, we refer to her as A.B., using initials that do not correspond to her name. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

department, and all records of this earlier investigation have been destroyed. A.B. told investigators in 2021 that two relatives of Walton reported to her (also in 2021) that they had been sexually assaulted by Walton when the relatives were children. Walton denied to investigators having assaulted A.B. and one of his underage relatives, but he admitted to engaging in sexual contact with the other underage relative. The defense PSI recommended that the circuit court sentence Walton to ten years of confinement and seven years of extended supervision.

¶8      Also before sentencing, the prosecution provided the circuit court with a written impact statement from a victim of one of the child pornography counts (a different person from either A.B. or from Walton's two underage relatives).

¶9      At the sentencing hearing, A.B. provided a statement describing the lasting negative effects on her life of having survived sexual assaults at Walton's hands.

¶10     The prosecution recommended consecutive sentences for each count, which would have resulted in a total of 75 years of initial confinement and 50 years of extended supervision.

¶11     The defense conceded that the gravity of the child pornography offenses was severe, but argued that other sentencing objectives and factors weighed in favor of a more lenient sentence. The defense argued that there were reasons to doubt A.B.'s allegations of sexual assaults, such as the purported lack of evidence to corroborate A.B.'s version of events, and that accordingly the circuit court should not weigh the conduct associated with the read-in offenses heavily. The defense further argued that Walton's age at the time of sentencing, 82, and his health problems, supported a finding that there was little need to

protect the public from Walton. The defense further argued in part that non-custodial conditions of supervision which the court could impose, such as ordering that his internet access be limited, would be sufficient to protect the public. We address other points made by the defense at the sentencing hearing in the discussion below.

¶12     The circuit court characterized the cumulative gravity of the child pornography offenses as "enormous." The court explained that it was placing weight on the written statement of the child pornography victim regarding the lasting effects of the crimes committed against that person. The court further said that the need to protect the public from Walton was "extraordinary." As part of this discussion, the court observed that in many sexual offense cases the "proclivity" of a defendant to reoffend "decline[s] greatly" as the defendant ages, but that this was not the case here because Walton possessed child pornography while in his eighties, decades after he had sexually assaulted A.B. The court credited A.B.'s allegations, directly addressing and rejecting Walton's arguments that the court place less weight on conduct alleged as part of the read-in offenses. The court said that there was "a need to punish" Walton, but beyond that, "the biggest need is to protect the public from him."

¶13     Based on these and other considerations that we describe in more detail below, the circuit court sentenced Walton to four years initial confinement and six years of extended supervision on each of the counts of conviction. These sentences are to run consecutively, resulting in a total of 20 years of initial confinement and 30 years of extended supervision.

**DISCUSSION**

¶14    We review a circuit court's sentencing decision for an erroneous exercise of discretion.  *See* ***State v. Gallion***, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197.  The sentencing court is required to specify the objectives of the sentence, which include "the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others."  *See* ***id.***, ¶40. The sentencing court must "describe the facts relevant to these objectives," and why, "in light of the facts of the case," "particular component parts of the sentence imposed advance the specified objectives."  *See* ***id.***, ¶42.  The court must also identify "the factors that were considered in arriving at the sentence and indicate how those factors fit the objectives and influence the decision."  ***Id.***, ¶43.[3]

## I.  Conduct Associated with the Read-In Charges

¶15    Walton argues that the circuit court erroneously exercised its discretion by placing too much weight on the sexual assaults alleged in the read-in charges.  Specifically, Walton contends that the court relied too heavily on the alleged read-in conduct in distinguishing Walton's case from the sentences that he argues courts typically impose in cases involving charges limited to the possession of child pornography, in which the statutorily mandated minimum sentence of three years is deemed sufficient.  *See* WIS. STAT. § 939.617 (requiring a minimum of three years initial confinement for violations of WIS. STAT. § 948.12 subject to exceptions related to the age of the convicted person not applicable here).  We

---

[3] The State argues that Walton forfeited each of his arguments challenging the sentence by failing to raise them in a postconviction motion.  We assume that Walton's arguments are preserved for appellate review and address them on the merits.

reject this argument because the court credited A.B.'s statement that she was sexually assaulted by Walton, and the court supported its decision that this conduct represented a significantly aggravating factor in sentencing Walton on the child pornography possession charges.

¶16    As background on this issue, Walton notes the following regarding the sentencing hearing. Based on information presented by the defense, it was undisputed that approximately 76 percent of defendants in Wood County cases involving convictions for possession of child pornography received "three to five years of prison time," "only three percent [of such defendants] were sentenced to five to ten years," and none were sentenced to more than ten years.[4]    The sentencing court acknowledged that the court would "often" impose the minimum sentence of three years required under WIS. STAT. § 939.617. The court explained that in such cases sentencing court is typically left with a factual "vacuum" around the charge or charges—for example, the defendant is alleged to have possessed only a small number of images and has no known history of prior possessions or related offenses. In contrast here, the court noted that it was crediting A.B.'s allegations, reflected in the read-in charges, that Walton sexually assaulted her.

¶17    A sentencing court "'may consider uncharged and unproven offenses.'" *See* **State v. Frey**, 2012 WI 99, ¶47, 343 Wis. 2d 358, 817 N.W.2d 436 (quoted source omitted). When the prosecution and the defendant agree that

---

[4] In providing statistical information to the circuit court regarding sentences for child pornography imposed in Wood County, Walton's counsel did not specify the time period covered. Counsel merely represented that she had "look[ed] at data from Court Tracker for Wood County." For purposes of addressing Walton's argument on appeal, we assume that the time period covered fairly represented all of the sentences for child pornography that had been imposed in the county in recent years, which appears to have been the assumption made by the sentencing court.

charges will be read in for sentencing purposes, "those charges are expected to be considered in sentencing, with the understanding that the read-in charges could increase the sentence up to the maximum that the defendant could receive for the conviction in exchange for the promise not to prosecute those additional offenses." *Id.*, ¶68 (citation omitted). This court has declined to adopt a formal burden of proof for facts related to read-in offenses. *See State v. Hubert*, 181 Wis. 2d 333, 345, 510 N.W.2d 799 (Ct. App. 1993). Instead, the defendant must have an opportunity to address read-in allegations, and the sentencing court need only demonstrate that its consideration of facts related to the read-in allegations involve a reasonable exercise of discretion. *Id.* at 345-46; *see also State v. Arredondo*, 2004 WI App 7, ¶¶54-55, 269 Wis. 2d 369, 674 N.W.2d 647 (2003) (sentencing court "may consider factual circumstances related to offenses for which the defendant has been acquitted"—information relied upon in sentencing "'need not … be established beyond a reasonable doubt'" (quoted source omitted)).

¶18    With this as background, Walton's argument on this issue boils down to the contention that the circuit court could have decided, for various reasons, to place little or no weight on the alleged conduct associated with the read-in charges. In particular, Walton emphasizes that human services social workers categorized A.B.'s allegations as "unsubstantiated" and that the court lacked contemporaneous records of the investigation because they had been destroyed. But the sentencing court explicitly declined to discredit A.B.'s allegations based on those facts. To the contrary, the court said that "all systems" in Wood County had failed at times "to properly identify and prosecute people" who had sexually assaulted young relatives, including in the case of A.B.'s initial reporting. Indeed, after weighing the facts and assessing A.B.'s credibility, the court explicitly credited her statement that she had been sexually assaulted by

Walton. Walton fails to show that the court relied on materially inaccurate or unreliable information or that its reasoning on this issue was flawed in some respect.

¶19 Walton contends that the circuit court erred by concluding that Walton's decision to agree to a plea deal that involved allowing the sexual assault charges to be read in for sentencing purposes was equivalent to Walton admitting to the court that he assaulted A.B. It is true that a defendant need not admit guilt in order for a read-in charge to be considered by a sentencing court and that a sentencing court should not deem the allegations behind a read-in charge to have been admitted by the defendant based merely on the defendant's agreement to allow the charge to be read in for sentencing purposes. *See State v. Straszkowski*, 2008 WI 65, ¶58, 310 Wis. 2d 259, 750 N.W.2d 835. But Walton fails to show that the court here misapplied these legal principles. More specifically, Walton fails to provide record support for the proposition that the court viewed his agreement to allow the charges to be read in as an admission of guilt as to the alleged charges.

¶20 At one point, the sentencing court observed that Walton's decision could be considered a "tacit admission." But this came in the context of the court responding to an argument by defense counsel that the prosecution had offered to have the charges treated as read ins—as opposed to going to trial or obtaining convictions based on pleas to those charges—as an implied admission that the prosecution could not prove the charges beyond a reasonable doubt. On this topic, the court is most reasonably understood to have observed that Walton may have been motivated to accept the plea deal, including the reading in of the charges, out of recognition that the State might be able to prove those charges at trial. In any case, as noted, the court clearly credited A.B.'s allegations regarding the assaults.

9

The court relied on its findings regarding Walton's conduct and did not simply assume the truth of the allegations behind the read-in charges. *See State v. Loomis*, 2016 WI 68, ¶¶117-19, 371 Wis. 2d 235, 881 N.W.2d 749 (affirming sentencing court's determination that State's argument regarding read-in offense was more credible than that of defense, after court "weighed the facts [and] assessed the credibility and the recognized legal standards for read-in offenses").

## II. The Defense PSI

¶21 Walton argues that the circuit court erred in giving no weight to the conclusion stated in the defense PSI that Walton presented a low risk of recidivism. As part of this argument, he describes in detail the various factors that the defense PSI took into account, including his educational background, employment record, and social relationships. This argument fails on multiple levels.

¶22 We begin with the fundamental point that sentencing courts are not bound by the recommendations contained even in those PSIs prepared by order of the court under WIS. STAT. § 972.15. *See Greve*, 272 Wis. 2d 444, ¶10. Indeed, "a PSI is not required prior to sentencing" at all. *See id.* More generally, the weight given to specific sentencing factors is a determination "particularly within the wide discretion of the sentencing judge." *State v. Stenzel*, 2004 WI App 181, ¶9, 276 Wis. 2d 224, 688 N.W.2d 20 (citing *Anderson v. State*, 76 Wis. 2d 361, 364, 251 N.W.2d 768 (1977)). It follows from these points that the court here was not required to give significant weight to the defense PSI as to any particular aspect of its analysis.

¶23 Beyond that, the sentencing court explicitly rejected the defense PSI on the topic of how the court should weigh Walton's risk of reoffending, and the

court adequately explained its reasoning. The court rejected for purposes of this particular case the relevance of the general proposition, relied on by the defense PSI, that the risk of recidivism with sexual offenses significantly declines with the age of the defendant. As noted above, the court was concerned by the fact that Walton was convicted of having possessed child pornography at a relatively advanced age. Walton emphasizes other considerations that went into the defense PSI's analysis that the circuit court did not explicitly address, but he cites nothing that overcomes the presumption that the court reasonably exercised its sentencing discretion. *See State v. Harris*, 2010 WI 79, ¶3, 326 Wis. 2d 685, 786 N.W.2d 409 ("Sentencing decisions are afforded a presumption of reasonability consistent with Wisconsin's strong public policy against interference with a circuit court's discretion."). For example, Walton notes that the defense PSI characterized Walton as having a low risk of recidivism in part due to his having no history of convictions on serious charges. But, for reasons we have explained, the court had a reasonable basis to determine that his actual history included committing grave offenses, even if he had not been previously convicted of that conduct.

¶24 Along similar lines, Walton cites other reasons that the circuit court could have determined that the need to protect the public did not support such a long sentence of confinement. He argues that, to the extent that he presented some continued risk to the public, the court could have addressed this adequately through conditions of extended supervision, such as that Walton not have access or only limited access to the internet. As part of this argument, Walton notes that he appears to have complied with all of his bond restrictions, which he argues demonstrated that he could be counted on to comply with conditions of extended supervision. But Walton does not establish that the court was required to find that

11

such measures were adequate to protect the public from the risk of Walton reoffending if he were not confined.

## III. Consecutive Sentences

¶25 Walton argues that the circuit court did not adequately explain its basis for sentencing him for each of the child pornography convictions consecutively as opposed to concurrently. He points out that the court did not separately and explicitly explain the basis for consecutive sentences, which he contends was an erroneous exercise of discretion. But Walton is incorrect in operating from the premise that the court needed to explicitly tie its decision to impose consecutive sentences to particular parts of the court's explicitly stated reasons for imposing the sentence.

¶26 "Whether to impose consecutive, as opposed to concurrent, sentences is, like all other sentencing decisions, committed to the trial court's discretion." *State v. Ramuta*, 2003 WI App 80, ¶24, 261 Wis. 2d 784, 661 N.W.2d 483 (quoted source and alteration marks omitted). "In sentencing a defendant to consecutive sentences, the trial court must provide sufficient justification for such sentences and apply the same factors concerning the length of a sentence to its determination of whether sentences should be served concurrently or consecutively." *See State v. Hall*, 2002 WI App 108, ¶8, 255 Wis. 2d 662, 648 N.W.2d 41. However, there is no "procedural requirement at sentencing that the [circuit] court state separately why it chose a consecutive rather than a concurrent sentence." *State v. Berggren*, 2009 WI App 82, ¶45, 320 Wis. 2d 209, 769 N.W.2d 110 (explaining that *Hall* merely "emphasized the well-settled right of defendants to have the relevant and material factors influencing their sentences explained on the record").

¶27 Given this legal standard, it was adequate here for the circuit court to impose consecutive sentences because the court sufficiently articulated its consideration of relevant sentencing factors in a manner that reasonably supports the imposition of consecutive sentences. As noted above, the court determined that the gravity of the offenses and the need to protect the public both required a significant sentence of confinement. Although the court did not explicitly address Walton's rehabilitative needs, the court demonstrated throughout its overall reasoning that, under the circumstances, other factors significantly outweighed the likelihood that Walton could be expected to rehabilitate to the point of posing little risk of reoffending. *See State v. Bolstad*, 2021 WI App 81, ¶¶15-16, 399 Wis. 2d 815, 967 N.W.2d 164 (a sentence "may be based on any or all of the three [required] factors after all have been considered" and "proper sentencing discretion can exist without explicitly identifying the sentencing factors" (quotation modified)).

¶28 Further, the State points out that the five counts of possession of child pornography for which Walton was sentenced were each based on an image of a different victim or victims and argues that this further supported imposing consecutive sentences. *See State v. Hamm*, 146 Wis. 2d 130, 157, 430 N.W.2d 584 (Ct. App. 1988) (concluding it was "entirely reasonable to make" sentences for "separate sexual assault counts involving different persons at different times and locations consecutive to each other"). Walton does not address the State's argument on reply, conceding it. *See State v. Chu*, 2002 WI App 98, ¶¶41, 46, 53, 253 Wis. 2d 666, 643 N.W.2d 878 (this court may deem the failure of a reply brief to respond to an argument as a concession without further discussion).

## IV. Constitutionality of Sentence Severity

¶29     Walton argues that, given his age and health status, his sentence is a de facto life sentence, and he contends that imposing such a sentence under these circumstances violates the prohibition on cruel and unusual punishment contained in the United States and Wisconsin constitutions. *See* ***State v. Ninham***, 2011 WI 33, ¶45, 333 Wis. 2d 335, 797 N.W.2d 451 (citing U.S. CONST. amend. VIII; WIS. CONST. art. I, § 6). A criminal sentence violates this constitutional prohibition when it is "'so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'" ***State v. Davis***, 2005 WI App 98, ¶21, 281 Wis. 2d 118, 698 N.W.2d 823 (quoting ***State v. Pratt***, 36 Wis. 2d 312, 322, 153 N.W.2d 18 (1967)).[5] We conclude that the State is correct that, applying the pertinent legal factors, Walton fails to establish that his sentence was unconstitutional.

¶30     Walton relies on federal precedent as persuasive authority for the proposition that the circuit court here imposed a sentence that was unconstitutionally disproportionate to the severity of the convicted offenses. *See* ***Ninham***, 333 Wis. 2d 335, ¶45 (noting that court's analysis of whether a

---

[5] Walton might intend to suggest in his opening brief on appeal that the circuit court was prohibited by statute from imposing what he characterizes as a de facto life sentence because the possession of child pornography constitutes a Class D felony. *See* WIS. STAT. § 948.12(3)(a). The argument might be that, because Class D felonies are punishable by a term of imprisonment "not to exceed 25 years," *see* WIS. STAT. § 939.50(3)(d), the court could not impose "life imprisonment," because "life imprisonment" is reserved for the punishment of Class A felonies, *see* § 939.50(3)(a). If this argument is intended, it fails for at least the reason that, after the State argues on appeal that pertinent statutes authorized the court to impose the consecutive sentences at issue here, Walton concedes the point by failing to address that argument in his reply brief. *See* ***State v. Chu***, 2002 WI App 98, ¶¶41, 46, 53, 253 Wis. 2d 666, 643 N.W.2d 878.

punishment was cruel and unusual was "largely guided by the [U.S.] Supreme Court's Eighth Amendment jurisprudence"). Specifically, he contends that the sentence here was "grossly disproportionate in violation of the Eighth Amendment" under the following factors: "'(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other [persons] in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.'" *United States v. Niggemann*, 881 F.3d 976, 981 (7th Cir. 2018) (quoting *Ewing v. California*, 538 U.S. 11, 22 (2003) (plurality op.) (in turn quoting *Solem v. Helm*, 463 U.S. 277, 292 (1983))).

¶31 Regarding the first *Niggemann* factor, there can be no reasonable dispute that the circuit court here had a reasonable basis to determine that the gravity of Walton's offenses of conviction here are great. *See id.* at 982 (noting that defendant's "consumption of child pornography" was a serious crime because it "incentivized [the pornography's] creation"). At the same time, there can be no reasonable dispute that 20 years of initial confinement followed by 30 years of extended supervision is a "harsh" penalty, not least for someone of Walton's relatively advanced age. Under the current sentence, there would appear to be little chance that Walton will not die in prison and absolutely no chance that he could ever not be on extended supervision. But, as we have discussed, the sentencing court had a basis to determine, in part based on the earlier sexual assaults, that his possession of the child pornography represented an ongoing threat to the public that demands extended confinement having these results.

¶32 Further, the sentence was well within the maximum that the circuit court could have imposed, which is relevant to the first *Niggeman* factor. This undermines Walton's argument that the sentence was unconstitutionally disproportionate. *See Berggren*, 320 Wis. 2d 209, ¶47 ("'A sentence well within

15

the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'" (*State v. Daniels*, 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983))). Moreover, this court has upheld challenges to sentences by rejecting arguments that they were excessive because they constituted "de facto" life sentences. *See Stenzel*, 276 Wis. 2d 224, ¶¶11-13 (rejecting argument that sentence of eight years of initial confinement, which defendant characterized as "de facto life sentence," was unreasonable given sentencing court's conclusion that "the gravity of the offense was enormous"); *Ramuta*, 261 Wis. 2d 784, ¶¶24-26 (concluding it was "within the [sentencing] court's discretion" to impose what was potentially, in effect, a life sentence based on defendant's age and health, and to impose a consecutive sentence "as essential to the public's protection").

¶33 Summing up regarding the first *Niggemann* factor, under the circumstances, Walton fails to support an inference that the sentence here was "'grossly disproportionate to the crime.'" *See Niggemann*, 881 F.3d at 981-82 (upholding as constitutionally proportionate a 182-month sentence for conviction of one count each of receipt and possession of child pornography) (quoting *Ewing*, 538 U.S. at 23). As the State notes, under applicable federal precedent, Walton's proportionality argument fails based on his inability to show that the first *Niggemann* factor noted supports his position. *See id.* at 981 (the "gravity of the offense and the harshness of the penalty" factor "operates as a threshold requirement"—"the analysis does not move on to consider sentences imposed on other criminals or in other jurisdictions" if the requirement is unmet).

¶34 Beyond that, even if we were to reach the other two proportionality factors in *Niggemann*, Walton fails to show that they support a determination of a

16

constitutional violation here. As noted, the circuit court explained why Walton's conduct reflected in the read-in offenses distinguished this case from those in which imposing the mandatory minimum sentence of three years for child pornography was appropriate, and, as explained above, we reject Walton's argument challenging the court's reliance on the read-in offenses as aggravating factors. *See State v. Schmidt*, 2021 WI 65, ¶2, 397 Wis. 2d 758, 960 N.W.2d 888 (pled to six counts of possession of child pornography, and remaining possession of child pornography and failing to register for sex-offender registry read in, resulting in sentence of 15 years of initial confinement and 15 years of extended supervision); *State v. Multaler*, 2001 WI App 149, ¶1, 246 Wis. 2d 752, 632 N.W.2d 89 (28 counts of possession of child pornography with prior criminal history and sexual conduct resulted in maximum 56-year sentence). Walton directs us to case law from outside Wisconsin that he contends shows that the sentence here was unduly harsh. However, on appeal, after the State distinguishes these cases based on the sentencing court here placing significant weight on the sexual assaults found by the court, Walton concedes the point by failing to address it in his reply brief on appeal. *See Chu*, 253 Wis. 2d 666, ¶¶41, 46, 53.

## CONCLUSION

¶35 For these reasons, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.

17