Sᴛᴀᴛᴇ of Wisconsin, Plaintiff-Respondent,†

v.

George S. Tᴜʟʟᴇʏ, Defendant-Appellant.

Court of Appeals

*Nos. 00–3084–CR, 00–3085–CR. Submitted on briefs June 11, 2001.—Decided September 27, 2001.*

2001 WI App 236

(Also reported in 635 N.W.2d 807.)

† Petition to review denied 12-17-01.

509

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Patrick M. Donnelly*, assistant state public defender.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Diane M. Welsh*, assistant attorney general.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. George S. Tulley appeals judgments of the circuit court convicting him of bail jumping, witness intimidation, and ten counts of

sexual assault of a child, A.K. He also appeals the circuit court's order denying his postconviction motions. He argues that the court erred in conducting *in camera voir dire* of three prospective jurors and that his trial counsel was ineffective for failing to object to a jury instruction and the verdict forms, as well as for introducing evidence that Tulley's sons had sexually assaulted A.K. We conclude that (1) the court's error in conducting *in camera voir dire* of three prospective jurors was harmless; (2) the jury instructions and verdict forms correctly stated the applicable law; and (3) Tulley was not denied effective assistance of counsel. Therefore, we affirm the judgments and order of the circuit court.

## BACKGROUND

¶ 2. A September 1, 1999, information charged Tulley with ten counts of second-degree sexual assault of a child. The information alleged that Tulley had repeatedly had sexual contact with A.K., his fourteen-year-old niece, who lived with him and his family. A separate information charged Tulley with bail jumping and witness intimidation based on an incident in which he allegedly yelled obscenities at A.K. from a passing car, thereby violating the no-contact provision of his bail.

¶ 3. Tulley pled not guilty, and his case was tried to a jury. During *voir dire,* the court interviewed three potential jurors in chambers outside the presence of both attorneys, the defendant and the court reporter. Then it excused each potential juror for cause. During the trial, A.K. testified that Tulley had sexual contact, including sexual intercourse, with her numerous times, although she could not recall exactly how many. She testified that he assaulted her at five different

locations—the basement of the farmhouse where they lived and four other locations on or near the farm. Both the prosecution and defense introduced testimony that two of Tulley's sons had been convicted for sexually assaulting A.K. Following the close of evidence, the verdict forms were drafted to reflect two acts of sexual contact in each of the five locations. Without objection from defense counsel, the jury was instructed as follows regarding unanimous verdicts:

> It is for you to determine whether the defendant is guilty or not guilty of each of the offenses charged. You must make a finding as to each count of the informations. Each count charges a separate crime and you must consider each one separately. Your verdict for the crime charged in one count must not affect your verdict on any other count.
>
> This is a criminal, not a civil, case. Therefore, before the jury may return a verdict which may be legally received, such verdict must be reached unanimously. In a criminal case, all 12 jurors must agree in order to arrive at a verdict.

¶ 4. After the jury returned a guilty verdict on all counts, Tulley brought a postconviction motion seeking a new trial on several grounds, including (1) that the circuit court had erred by conducting *in camera voir dire* of three prospective jurors; and (2) that he had ineffective assistance of counsel. The circuit court denied Tulley's postconviction motions. Tulley appeals.

## DISCUSSION

**Standard of Review.**

¶ 5. Whether a criminal defendant has been denied his right to due process is a question of constitutional fact that we review *de novo. State v. Fawcett*, 145 Wis. 2d 244, 250, 426 N.W.2d 91, 94 (Ct. App. 1988). When we review an ineffective assistance of counsel claim, we examine a circuit court's findings of fact concerning the circumstances of the case and counsel's conduct and strategy under the clearly erroneous standard. *State v. Lindell*, 2000 WI App 180, ¶ 8, 238 Wis. 2d 422, 429, 617 N.W.2d 500, 503, *aff'd*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223. However, whether counsel's performance was deficient and whether such deficient performance was prejudicial are questions of law, which we review *de novo. Id.*

***Voir Dire.***

¶ 6. Both the United States and Wisconsin constitutions grant a criminal defendant the right to be present and to have counsel present during every critical stage of a criminal proceeding, including during jury *voir dire.* U.S. Const. amends. VI and XIV; Wis. Const. art. I, § 7; *State v. David J.K.*, 190 Wis. 2d 726, 736, 528 N.W.2d 434, 438 (Ct. App. 1994). Furthermore, a criminal defendant also has a statutory right to be present during *voir dire* of the jury. Wis. Stat. § 971.04(1)(c)

(1999–2000).[1] The right to be present during *voir dire* and, if represented by counsel, the right to have counsel present during *voir dire* cannot be waived. *State v. Harris*, 229 Wis. 2d 832, 839, 601 N.W.2d 682, 685 (Ct. App. 1999).

¶ 7. However, deprivation of both the defendant's right to be present and to have counsel present during *voir dire* is reviewed on appeal for harmless error. *Harris*, 229 Wis. 2d at 839–40, 601 N.W.2d at 686. Generally, an error is harmless if there is no reasonable possibility that it contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). A "reasonable possibility" is one sufficient to undermine confidence in the outcome of the proceeding. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289, 295 (1993). The burden of proof is on the beneficiary of the error to establish that the error was not prejudicial. *Dyess*, 124 Wis. 2d at 543–44 n.11, 370 N.W.2d at 232 n.11.

¶ 8. In the case at hand, the circuit court examined three members of the venire outside the presence of the defendant, his counsel and the prosecuting attorney, without objection from anyone. The first potential juror, J.K., told the court that she had a medical condition, and after the court had questioned her *in camera,* she was excused. The second potential juror, D.E., asked to speak privately with the court in response to a question about whether any of the potential jurors had life experiences that would make it difficult

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

for them to be impartial. After the court's *in camera* conference with D.E., she was excused for cause, as the court explained:

> All right, Mrs. [E.] and I discussed and agreed in discussing it with her that I would inform counsel that I'm excusing her because she felt that because of life experiences she could not be fair to the State in this case. So she's excused for that reason.

The third potential juror, A.G., also asked to speak privately with the court in response to its question about whether any of the jurors believed they could not serve on the jury for any other reason. After an *in camera* conference with A.G., the court excused him and stated:

> All right, the court will excuse Mr. [G.] for reasons similar to the reasons that [R.P.] was excused.[2]

¶ 9. At the postconviction hearing, the court stated that it did not recall why any of the three jurors had been excused and denied Tulley's motion for a new trial. The court explained its decision as follows:

> I don't think jurors are required to be subject to the indignity of having to disclose certain things in . . . front of counsel, other jurors, and even the defendant in a criminal case. I don't believe that the law is that the defendant's right to be present during the trial, his right to *voir dire* examination goes that far.
>
> . . .
>
> I'm satisfied that if we're going to have a process which indeed is fair to both the State and to defendants

---

[2] The court excused R.P. after he stated that he would be inclined to accept the victim's testimony at face value because of his experiences with children as a parent and school bus driver.

and protects the due process rights of defendants, jurors have to have some kind of haven where if they have particular problems they can reveal those problems.

I'm thinking back to a case I tried not long ago with [the prosecutor], a sexual assault case, and he from time to time asked the court to ask questions that he apparently doesn't want to ask the jurors, the panel as a whole, questions such as "have you ever been convicted of sexually assaulting someone or arrested for sexually assaulting someone?"

The chances of someone frankly raising their hand and saying "I've been accused of sexually assaulting someone" are pretty damn slim when you've got a room full of 40 people on the record.

There are things that jurors will sometimes say in chambers to a judge alone that they might not say in open court. And frankly, I think defendant's rights, if anything, are protected by a judge doing that.

¶ 10. The State, by citing *David J.K.*, 190 Wis. 2d at 736, 528 N.W.2d at 438, recognizes that Tulley has a statutory and a constitutional right to be present during the *voir dire* of prospective jurors. However, it argues that any error was harmless because the court excused all three jurors who were interviewed *in camera*. Tulley responds that we should presume prejudice because he was denied the assistance of counsel during this critical stage of the adjudicative process. We agree with the State.

¶ 11. To establish that the circuit court's *in camera* interview of the three prospective jurors constituted harmless error, the State must show that there is no reasonable possibility that the *in camera* interviews

517

contributed to Tulley's conviction. *Dyess*, 124 Wis. 2d at 543, 370 N.W.2d at 231–32. Tulley was present during the entire *voir dire* of all prospective jurors who served on the panel that convicted him.[3] He does not assert that the jurors who served were not fair and impartial. He does not claim that the outcome of the trial was affected by the court's *in camera* discussions with the three jurors. Because the three prospective jurors with whom the court spoke *in camera* did not serve on the jury, we conclude that the State has met its burden to show that there is no reasonable possibility that the court's error contributed to Tulley's conviction. Therefore, we conclude that the circuit court's *in camera* interview of three prospective jurors, though error, was harmless error.

---

[3] Tulley cites *State v. Harris*, 229 Wis. 2d 832, 601 N.W.2d 682 (Ct. App. 1999), for the proposition that when a circuit court conducts *voir dire* outside the presence of the defendant and his counsel reversible error occurs. However, *Harris* turned on the fact that, while the defendant and his counsel were not present, the circuit court had spoken at length with the entire venire, excusing several for cause but permitting others to serve on the jury that convicted Harris. We concluded that the court's error was not harmless because the defendant and his counsel were not able to observe the responses of the jurors who remained on the panel and because the jurors who were not excused might have drawn negative inferences from Harris's absence. *Id.* at 844–45, 601 N.W.2d at 688. In contrast to *Harris*, Tulley and his counsel were able to observe the responses of every potential juror except the three whom the court interviewed *in camera* and excused for cause. Furthermore, the potential jurors could not have drawn a negative inference from Tulley's absence because he and his counsel remained in the courtroom throughout the proceedings.

**Ineffective Assistance.**

¶ 12. The right to counsel guaranteed to a criminal defendant is the right to effective counsel. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To prevail on an ineffective assistance of counsel claim, an appellant must show that counsel's performance was deficient and that that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Hubert*, 181 Wis. 2d 333, 339–40, 510 N.W.2d 799, 801–02 (Ct. App. 1993). The burden of proof to show ineffective assistance of counsel is on the appellant. *State v. Smith*, 207 Wis. 2d 258, 273, 558 N.W.2d 379, 386 (1997). The test for deficient performance is whether counsel's representation fell below the representation that a reasonably effective attorney would provide. *Strickland*, 466 U.S. at 687–88. In regard to prejudice, an appellant must prove that counsel's deficient performance was so substantial and serious that there is a reasonable probability that, but for the inadequate representation, the result of the trial would have been different. *Id.* at 694. An appellant must prevail on both prongs of the *Strickland* test to obtain relief. *State v. Wirts*, 176 Wis. 2d 174, 180, 500 N.W.2d 317, 318 (Ct. App. 1993).

¶ 13. Tulley argues that his trial counsel was ineffective for three reasons. First, trial counsel did not object to the unanimity instruction and the verdict forms given to the jury before deliberations. Second, trial counsel introduced evidence that two of Tulley's sons also had confessed and pled guilty to sexual assault of A.K., and third, he failed to object when the prosecutor argued to the jury that Tulley's failure to plead guilty was evidence of his manipulative nature.

### 1. Unanimity.

¶ 14. Because Tulley did not object to the jury instructions or verdict forms at trial, we may review his claim that they violated his right to jury unanimity only in the context of a claim of ineffective assistance of counsel. *State v. Marcum*, 166 Wis. 2d 908, 916, 480 N.W.2d 545, 549–50 (Ct. App. 1992). The Wisconsin Constitution guarantees the right to a jury trial. WIS. CONST. art. I, §§ 5 and 7. In criminal cases, the right to a jury trial implies the right to a unanimous verdict on the ultimate issue of guilt or innocence. *Richardson v. United States*, 526 U.S. 813, 817, 819–20 (1999); *State v. Johnson*, 2001 WI 52, ¶ 11, 243 Wis. 2d 365, 372–73, 627 N.W.2d 455, 459. "The principal justification for the unanimity requirement is that it ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense." *Johnson*, 2001 WI 52 at ¶ 11 (citation omitted). A defendant may be denied the right to a unanimous jury verdict if (1) the prosecutor issues only one count but presents evidence of multiple crimes; or (2) the prosecutor issues only one count but introduces evidence of multiple acts that are not conceptually similar[4] but each of which would be sufficient to constitute the criminal offense charged; and (3) with either alternative one or two above, the jurors do not unanimously agree which crime or acts the defendant committed. *State v. McMahon*, 186 Wis. 2d 68, 81, 519

---

[4] *See also State v. Derango*, 2000 WI 89, ¶¶ 22–24, 236 Wis. 2d 721, 736–38, 613 N.W.2d 833, 840–41 (holding that the second step of the analysis is in actuality a due process analysis focusing on whether it is fundamentally fair not to require unanimity.)

N.W.2d 621, 626–27 (Ct. App. 1994). The Wisconsin Supreme Court has constructed the following analysis to determine whether a defendant has been denied the right to a unanimous jury verdict:

> The first step is to determine whether the jury has been presented with evidence of multiple crimes or evidence of alternate means of committing the *actus reus* element of one crime. If more than one crime is presented to the jury, unanimity is required as to each. If there is only one crime, jury unanimity on the particular alternative means of committing the crime is required only if the acts are conceptually distinct. Unanimity is not required if the acts are conceptually similar.

*State v. Lomagro*, 113 Wis. 2d 582, 592, 335 N.W.2d 583, 589 (1983) (citations omitted).

¶ 15. Tulley asserts that trial counsel was ineffective for failing to object to the jury verdict forms and the unanimity instruction. The verdict forms asked the jury to decide whether Tulley was guilty of: "sexual contact with A.M.K. . . . in the basement of the Tulley residence" (counts one and two); "sexual contact with A.M.K. . . . in the Campton farm shed" (counts three and four); "sexual intercourse with A.M.K. . . . in the Campton woods" (counts five and six); "sexual contact with A.M.K. . . . in the Farm 4 shed" (counts seven and eight); and "sexual intercourse with A.M.K. . . . in the Farm 4 woods" (counts nine and ten). Each act was described as taking place between March 28, 1997, and November 18, 1997. The court gave the following standard instruction on unanimity:

> It is for you to determine whether the defendant is guilty or not guilty of each of the offenses charged. You must make a finding as to each count of the informations. Each count charges a separate crime and you

521

must consider each one separately. Your verdict for the crime charged in one count must not affect your verdict on any other count.

This is a criminal, not a civil, case. Therefore, before the jury may return a verdict which may be legally received, such verdict must be reached unanimously. In a criminal case, all 12 jurors must agree in order to arrive at a verdict.

¶ 16. The only direct evidence of the sexual assaults was the testimony of A.K., who testified that Tulley had assaulted her many times, including at least twice in each of the five locations described in the verdict forms. A.K. testified that Tulley had fondled her breasts and made her manipulate his penis more than once in the basement of the farm house; fondled her breasts and made her manipulate his penis "more than once for sure" in the Campton farm shed; had sexual intercourse with her in the Campton woods "a lot"; made her manipulate his penis "more than once for sure" in the Farm 4 shed; and had sexual intercourse with her in the Farm 4 woods "more than once on more than one day."

■■■

¶ 17. We conclude that, given the testimony at trial, Tulley has not met his burden of proving that trial counsel's not objecting to the jury instruction or verdict forms constituted deficient performance because the verdict forms and jury instruction correctly stated the applicable law. The jury was presented with evidence of multiple crimes in the form of A.K.'s testimony. The instruction that the court gave required the jury to unanimously agree on Tulley's guilt or innocence for each count. The verdict forms properly specified the location of each alleged assault and whether sexual

contact or sexual intercourse was alleged to have oc-
curred at each location. This is not a case in which a
juror reasonably could have doubted whether a particu-
lar charged activity at any location occurred while also
being convinced that other charged activity did occur at
the same location. There was no basis for finding that
some of the sexual assaults that A.K. described had
occurred but others had not, because all of the assaults
at all of the locations were described and supported by
the same uncontradicted testimony. Therefore, we con-
clude that Tulley has not met his burden to show that
trial counsel's performance in this area was deficient.

### 2. Evidence of Prior Assaults.

¶ 18. Tulley also argues that his trial counsel was
ineffective because he introduced evidence prejudicial
to Tulley without a valid strategic reason. At the
hearing on Tulley's postconviction motions, his trial
counsel testified:

Q. Did you have any tactical reasons for not object-
ing to the district attorney's comments . . . re-
garding this statement that the district attorney
made to the jury during its opening?

A. Regarding the sons?

Q. Yes.

A. Yeah, that was something I had mulled over for
basically the length of the preparatory period for
the trial. I debated all the way up to the morning
of trial whether I was going to file a motion in
limine to keep those facts out regarding the sons
and I had finally decided that tactically I needed

a reason or a motive for the victim in this case to lie. And so that's why I allowed the State to go into this.

. . . .

Q. . . . Could you be a little more specific in terms of what you decided concerning this information regarding the two sons?

A. The basic idea was why was she lying? . . . I had to have a theory on if she's lying, why. I think in sexual assaults you have to have a motive.

Q. Okay. Can you explain what your theory of defense was as to why or how this information furthered your theory of defense, this somehow undermined the credibility of the complaining witness in this case?

A. As regards to the sons, the incidents are . . . much fewer; in the neighborhood of three to four each, maybe as high as six. . . . I had an opportunity to be at the prelim for those and she was very specific about them. . . . [S]he's not very specific, in my opinion, at all regarding . . . Mr. George Tulley. So my theory was that she was lying about him, she'd gotten the boys in trouble and he had not protected her during this period of time and he was basically the father figure and she was going to get him in trouble, too.

¶ 19. The court found that defense counsel had made a strategic decision to introduce evidence that Tulley's sons also had sexually assaulted A.K. This finding is supported by trial counsel's testimony and is not clearly erroneous. Furthermore, while some might question the wisdom of admitting this evidence as a

trial strategy, we cannot say that, as a matter of law, counsel's strategy fell below that which would be provided by a reasonably effective attorney. Tulley also argues that counsel should have objected when the prosecutor used this information to support his closing argument about Tulley's manipulative disposition. While the circuit court acknowledged that it might have sustained an objection to the prosecutor's statements, it concluded, as we do also, that in the overall conduct of the trial, the result was reliable. *Strickland*, 466 U.S. at 686. And finally, Tulley argues that trial counsel's performance caused him "extreme prejudice," but he never explains the nature of the prejudice or how the result of the trial would have been different if trial counsel's representation had been different. Therefore, we conclude that even if we were to assume, *arguendo,* that trial counsel's performance were deficient, that deficiency was not prejudicial. Accordingly, we conclude that Tulley was not denied effective assistance of counsel and we affirm the judgments of conviction and the order of the circuit court denying postconviction relief.

## CONCLUSION

¶ 20. Because we conclude that (1) the court's error in conducting *in camera voir dire* of three prospective jurors was harmless; (2) the jury instructions and verdict forms correctly stated the applicable law; and (3) Tulley was not denied effective assistance of counsel, we affirm the judgments and order of the circuit court.

*By the Court.*—Judgments and order affirmed.