BRASH, J.
¶1 Jarmel Dontra Chisem appeals his judgment of conviction after a jury convicted him of first-degree reckless homicide as a party to a crime while using a dangerous weapon, as a repeater, and first-degree recklessly endangering safety as a party to a crime while using a dangerous weapon, as a repeater. Chisem also appeals from the trial court's order denying his motion for postconviction relief.
¶2 Chisem argues that the trial court erred when it denied his motion for severance from his codefendant, Howard Davis. Chisem's basis for this argument is focused on out-of-court inculpatory statements made by Davis to three witnesses for the State, which were admitted at trial. Chisem asserts that since these statements implicated only Davis, they were not admissible for two reasons: (1) because Davis exercised his Fifth Amendment right not to testify, and Chisem was unable to cross-examine Davis regarding these statements, Chisem argues that his right to confrontation was violated; and (2) that even if there was no confrontation violation, the testimony relating to these statements by Davis would have been inadmissible hearsay at a separate trial against Chisem. He also alleges that the trial court did not receive notice prior to trial that the State planned to introduce those statements.
¶3 Additionally, Chisem contends that there was a discovery violation surrounding one of those statements: a witness's statement to police was recorded by a detective with the Milwaukee Police Department, but that recording was subsequently lost. Because of its inability to produce this recording, Chisem argues that the State violated its discovery obligations.
¶4 In deciding Chisem's postconviction motion, the trial court held that it properly exercised its discretion in denying Chisem's motion for severance. The court concluded that Davis's statements to the witnesses were nontestimonial, and therefore the Confrontation Clause was not implicated. Furthermore, the court determined that the challenged statements would have been admissible in a separate trial against Chisem. The court noted one exception, acknowledging that one of the statements would have likely been deemed to be inadmissible hearsay, but concluding that any error in admitting that statement was harmless. The court further held that there was no discovery violation regarding the lost recording.
¶5 We agree with the trial court that there was no Confrontation Clause violation in this case. We also agree that there was no discovery violation based on the lost recording, as the record indicates that Chisem had actual notice of that witness's statement.
¶6 We further conclude that even if we assume, for the sake of argument, that all of the challenged statements would have been inadmissible hearsay in a separate trial, any error in their admission was harmless. We therefore affirm.
BACKGROUND
¶7 The charges against Chisem stem from a shooting that occurred on June 6, 2014. Milwaukee police officers found the victim-later identified as Raymond Harris-lying face down in a large pool of blood with multiple gunshot wounds. He was pronounced dead at the scene. Another victim, J.W., had been shot in the abdomen but survived.
¶8 During the investigation into the shooting, detectives reviewed surveillance video from a nearby business. They discovered that the shots were fired from a silver Saturn SUV. Detectives then spoke with Fabian Edmond, whose vehicle was also identified from the surveillance video as being at the scene of the shooting. Edmond identified the silver Saturn as being driven by Chisem earlier on the day of the shooting, with Davis in the passenger seat. Edmond further stated that at the time of the shooting he heard the shots, and that they had come from the Saturn. Edmond also told police that the day after the shooting, Chisem and Davis came to Edmond's place of employment and told him that if the police asked him about the shooting, he should say he did not know anything.
¶9 Detectives also spoke with Earnest Davis,[1] who was with Edmond at the time of the shooting. Earnest stated that he had seen Chisem driving the Saturn the day before the shooting, and that at the time of the shooting, he saw shots being fired from that vehicle. Earnest also saw Chisem and Davis shortly after the shooting; he said that Davis was sweating and threw his shirt in the garbage, and that Chisem told Earnest that he was not to speak about the incident.
¶10 Additionally, detectives spoke with Harris's sister, Deion Smith, who told them about an incident during the summer of 2013 in which Harris had shot Davis.
¶11 Police found the Saturn, which belonged to Chisem's girlfriend. Chisem and Davis were arrested and charged.
¶12 While Chisem and Davis were in jail awaiting trial, detectives received information regarding the case from an inmate, Jamil Tubbs, who was incarcerated with the defendants. Tubbs told Detective Matthew Bell that he had overheard Chisem and Davis talking and laughing about the shooting. Tubbs said that he heard Davis tell Chisem that Chisem "should have put the truck in the garage to hide it[.]" Tubbs also told Detective Bell that he specifically heard Davis state that he had shot J.W.
¶13 Another inmate incarcerated with Chisem and Davis, Willie Nelson, also spoke with Detective Timothy Graham. Nelson told the detective that he had several conversations with Davis regarding the circumstances of the shooting, including that Davis "had been jumped and been shot" previously by Harris. Davis's cell was subsequently searched, and rap lyrics written by Davis about the shooting were discovered.
¶14 Prior to trial, Chisem filed a motion to sever his case from Davis's. Chisem argued that certain evidence relating solely to Davis-his inculpatory statements to Tubbs and Nelson relating to the shooting of Harris and his motive for the shooting, as well as the rap lyrics discovered in his cell-would be prejudicial to Chisem. The State opposed severance, noting that introducing evidence to be used against only one codefendant is not a "unique situation" mandating severance. The State further noted that antagonistic defenses had not been asserted, and that the jury could be "properly instructed to consider the crimes charged against each defendant and the evidence as it pertains to each defendant separately and distinctly." The trial court agreed and denied Chisem's motion.
¶15 The case went to trial in March 2015. During the trial, the State called numerous witnesses, including J.W., the other shooting victim; Khijuan Parker, who was with J.W. when he got shot, saw the Saturn at the scene, and saw shots come from the general area where the Saturn was parked; Edmond, who had identified the Saturn at the scene and had seen Chisem and Davis in that vehicle earlier that day; Earnest, who was with Edmond and saw shots being fired from the Saturn; Smith, Harris's sister, who had information regarding the previous shooting of Davis by Harris; Tubbs and Nelson, the inmates who had heard Chisem and Davis discussing the shooting; Detective Bell, who testified about the statement he received from Tubbs; and Detective Graham who testified that Nelson's statement had implicated Chisem as well as Davis in the shooting, and included his explanation about losing the recording device with which he had recorded the statement he received from Nelson.
¶16 The jury found Chisem guilty of first-degree reckless homicide and first-degree recklessly endangering safety, both as a party to a crime while using a dangerous weapon, but found him not guilty of possession of a firearm. Chisem was sentenced in May 2015 to a total of forty-seven years, bifurcated as thirty-three years of initial confinement and fourteen years of extended supervision.
¶17 Chisem filed a postconviction motion requesting a new trial. He argued that the trial court erred in denying his motion for severance, based on the premise that his right to confrontation was violated because certain out-of-court statements by Davis were admitted and used as evidence against Chisem, but he was unable to cross-examine Davis regarding those statements since Davis did not testify. Chisem further asserted that those statements-made to Edmond, Tubbs, and Nelson, and admitted as admissions of a party opponent-would have been inadmissible hearsay in a separate trial against Chisem. Chisem also challenged the admission of Nelson's testimony because Detective Graham had lost the recording of Nelson's statement; Chisem asserted that this was a discovery violation since he was not provided with that recording.[2]
¶18 The trial court denied Chisem's motion. The court found that there was no Confrontation Clause violation because Davis's statements were nontestimonial and thus not covered by the Confrontation Clause. The court further noted that the State's argument that the evidence against Davis was also attributable to Chisem as a party to a crime was very persuasive.
¶19 The trial court also reviewed whether any of those out-of-court statements should not have been admitted because they would have been inadmissible hearsay at a separate trial against Chisem. The court found that, with the exception of Nelson's testimony, the statements would not have been excluded as inadmissible hearsay. However, the court agreed with the State that the admission of Nelson's testimony was harmless error. Additionally, the court concluded that there was no discovery violation that resulted from the lost recording of Nelson's statement because there was no evidence that Detective Graham acted in bad faith with the loss of the recording, and further, the admission of Nelson's testimony had been deemed harmless.
¶20 Therefore, the court found that it had properly exercised its discretion in denying Chisem's motion for severance. This appeal follows.
DISCUSSION
¶21 Chisem's overarching issue on appeal is whether the trial court erred in denying his motion for severance. Whether to sever codefendants from a joint trial is generally within the trial court's discretion. Cranmore v. State , 85 Wis. 2d 722, 755, 271 N.W.2d 402 (Ct. App. 1978). We will uphold a discretionary decision of the trial court if it " 'has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " Hefty v. Strickhouser , 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820 (citation omitted).
¶22 We first note that while severance is generally necessary in cases where antagonistic defenses will be advanced by the defendants, see Lampkins v. State , 51 Wis. 2d 564, 572, 187 N.W.2d 164 (1971), Chisem concedes that none were presented in this case.
¶23 Rather, Chisem's argument regarding severance focuses on the admission of certain out-of-court statements made by Davis to witnesses who testified on behalf of the State. Specifically, Chisem challenges the admissibility of inculpatory statements Davis made about himself to the following people regarding the shooting of Harris, as well as his motive for the shooting:
• Edmond, who testified that the day after the shooting both Chisem and Davis came to his workplace, where Davis instructed Edmond not to say anything about the shooting;
• Tubbs, who testified that while incarcerated with Chisem and Davis, he overheard a conversation by the defendants discussing the shooting, heard Davis say that he had shot J.W., and told Chisem that he should have hidden the truck in a garage; and
• Nelson, who testified that while incarcerated with Davis and Chisem, Davis told Nelson that his motive for shooting Harris was that Harris had shot him the previous summer.
Chisem argues that these particular statements were relevant only to Davis's case, not Chisem's.[3]
¶24 As the State and the trial court pointed out, those out-of-court statements are in fact relevant to Chisem's case because he was charged as a party to a crime. When a defendant is charged as a party to a crime, the State is asserting that the defendant either directly committed the crime or intentionally aided and abetted in the commission of the crime. See WIS. STAT. § 939.05(2) (2017-18).[4] While the State is not required to prove motive, evidence relating to a motive is certainly relevant. See WIS. STAT. § 904.01. Indeed, such evidence may be necessary to "furnish the context of the crime," which is a "valid basis" for its admission. State v. Chambers , 173 Wis. 2d 237, 255, 496 N.W.2d 191 (Ct. App. 1992). Therefore, the challenged statements, which provide context for the shooting, were relevant to Chisem's case.
¶25 We thus turn to the issue of whether those statements would have been admissible in a separate trial against Chisem. Chisem first argues that they would not be admissible because his right to confrontation was violated since Davis exercised his right not to testify at the joint trial. A defendant has the right to confront witnesses against him or her, as guaranteed by the Sixth Amendment to the United Stated Constitution as well as the Wisconsin Constitution. State v. Nieves , 2017 WI 69, ¶18, 376 Wis. 2d 300, 897 N.W.2d 363. "[W]hether the admission of evidence violates a defendant's right to confrontation is a question of law subject to independent appellate review." State v. Williams , 2002 WI 58, ¶7, 253 Wis. 2d 99, 644 N.W.2d 919.
¶26 Still, as demonstrated by Davis, a defendant also has a constitutional right against self-incrimination afforded by the Fifth Amendment. Nieves , 376 Wis. 2d 300, ¶19. As a result, "tension" between these two constitutional rights may arise in cases where defendants are tried jointly. Id. , ¶20.
¶27 This issue was recently addressed by our supreme court in Nieves . The court held that in cases where inculpatory statements of a non-testifying codefendant are nontestimonial, the confrontation rights of the codefendant challenging the admission of those statements are not violated. Id. , ¶2. The court noted that relevant case law which discusses distinguishing factors between testimonial and nontestimonial statements has generally focused on statements to law enforcement officers. See id. , ¶38. For example, statements to police for the "primary purpose of interrogation" to gather information that may be "potentially relevant to later criminal prosecution" are largely viewed as testimonial. Id. (citation and one set of quotation marks omitted). In contrast, statements given to police in an "informal setting," or simply to provide assistance to police to "meet an ongoing emergency," are more likely to be deemed nontestimonial. Id. , ¶¶38, 42 (citation and one set of quotation marks omitted).
¶28 Because the context of the statement is such a significant factor in this analysis, the court recognized that "statements to non-law enforcement individuals are unlikely to be testimonial" since a non-law enforcement individual is not someone who is "principally charged with uncovering and prosecuting criminal behavior[.]" Id. , ¶¶43-44 (citation and one set of quotation marks omitted).
¶29 In fact, Chisem concedes that the statements he is challenging "were all likely 'nontestimonial.' " Nevertheless, he urges us to follow our supreme court's holding in State v. Manuel , 2005 WI 75, 281 Wis. 2d 554, 697 N.W.2d 811.
¶30 In Manuel , our supreme court indicated that courts should continue to follow the test established in Ohio v. Roberts , 448 U.S. 56 (1980), stating that a simple hearsay analysis was "no substitute for constitutional examination" for assessing nontestimonial statements. Manuel , 281 Wis. 2d 554, ¶¶59-60. Chisem contends that because Nieves did not explicitly overrule Manuel , the law in this area is uncertain, and thus the Manuel/Roberts analysis is still properly applied here.
¶31 We disagree. In Nieves , our supreme court discussed the fact that the Roberts test was based on the "nebulous notion of 'reliability,' " and that it was later rejected by the United States Supreme Court in Crawford v. Washington , 541 U.S. 36 (2004), the case that "fundamentally altered the way in which courts analyze the Confrontation Clause." Nieves , 376 Wis. 2d 300, ¶¶25-26. Given our supreme court's holding in Nieves -which Chisem acknowledges is "unambiguous"-and its rejection of the reasoning in Roberts , it follows that it also effectively rejected the reasoning in Manuel . Therefore, we apply the Nieves rule to this case, and conclude that Davis's statements were nontestimonial. See Nieves , 376 Wis. 2d 300, ¶¶43-44. Therefore, there was no violation of Chisem's right to confrontation. See id. , ¶2.
¶32 Along a similar line of reasoning, Chisem next argues that severance was mandatory under WIS. STAT. § 971.12(3). That statute requires the State to advise the court prior to trial if the State "intends to use the statement of a codefendant which implicates another defendant in the crime charged," and requires the trial court to grant severance to that defendant. Id. The statute codified the rule established in Bruton v. United States , 391 U.S. 123, 137 (1968), which held that in Bruton's joint trial with a codefendant, the admission of that codefendant's confession-even though the jury was instructed to consider that evidence only against that codefendant-violated Bruton's right to confrontation. Id.
¶33 The Nieves court also addressed this statutory issue. It concluded that Crawford and its progeny had "limited the application of the Bruton doctrine to instances in which a codefendant's statements are testimonial" and, as a result, "Bruton is not violated by the admission of a non-testifying codefendant's statements that are nontestimonial." Nieves , 376 Wis. 2d 300, ¶2. The court further held that even if WIS. STAT. § 972.12(3) had been violated by the admission of nontestimonial hearsay statements, the error was harmless due to the "overwhelming evidence" against Nieves. Nieves , 376 Wis. 2d 300, ¶¶3, 52.
¶34 Similarly, in this case Chisem argues that even if his confrontation rights were not violated, Davis's out-of-court statements would have been inadmissible hearsay in a separate trial. The trial court found that none of the statements were hearsay, with the exception of the statement to Nelson as described by Detective Graham, the admission of which the court concluded was harmless error.
¶35 Instead of analyzing each challenged statement under the rules of evidence, we will assume, for the sake of brevity, that all of the challenged statements would have been deemed inadmissible hearsay at a separate trial against Chisem. A hearsay statement that was erroneously admitted is subject to a harmless error analysis. State v. Britt , 203 Wis. 2d 25, 41, 553 N.W.2d 528 (Ct. App. 1996). "Generally, an error is harmless if there is no reasonable possibility that it contributed to the conviction." State v. Tulley , 2001 WI App 236, ¶7, 248 Wis. 2d 505, 635 N.W.2d 807. A reasonable possibility is "one sufficient to undermine confidence in the outcome of the proceeding." Id. "In making this determination, we weigh the effect of the inadmissible evidence against the totality of the credible evidence supporting the verdict." Britt , 203 Wis. 2d at 41. "The burden of proof is on the beneficiary of the error to establish that the error was not prejudicial." Tulley , 248 Wis. 2d 505, ¶7.
¶36 Accordingly, we reviewed the credible evidence against Chisem presented at trial, outside of those challenged statements. This included:
• The surveillance video from the neighboring business showing shots being fired from the silver Saturn;
• The statement of Parker, who saw the Saturn at the scene of the shooting;
• The unchallenged statements by Edmond regarding seeing Chisem and Davis in the silver Saturn earlier on the day of the shooting, and being at the scene of the shooting where he heard shots come from that vehicle;
• The statements of Earnest, who was with Edmond, and saw shots being fired from the Saturn;
• The Saturn being found at the home of Chisem's girlfriend;
• The unchallenged statement of Tubbs that he heard both Chisem and Davis discussing the shooting while incarcerated with them.
¶37 In weighing this other evidence against Chisem, we conclude that it is sufficient to support the verdict against Chisem without the allegedly inadmissible statements. See Britt , 203 Wis. 2d at 41. Therefore, we conclude that the admission of those challenged statements did not affect the outcome. See Tulley , 248 Wis. 2d 505, ¶7. Accordingly, any error in admitting those statements was harmless. See id.
¶38 Relatedly, Chisem argues that he is entitled to a new trial because the trial court did not receive notice prior to trial that the State intended to use Davis's out-of-court statements to implicate Chisem. This argument is disingenuous. These witnesses are listed in the State's witness list. Furthermore, Chisem specifically raised the issues relating to this evidence in his motion for severance, and the trial court addressed them in denying that motion.
¶39 Finally, Chisem's claim that a discovery violation occurred with the loss of Nelson's recorded statement is not compelling. Detective Graham explained there was no requirement to record his interview with Nelson, but that it is his practice to do so. He subsequently lost his recording device. However, he prepared a summary report regarding the interview, which was provided to the defense in advance of trial.
¶40 In response to Chisem's motion to exclude Nelson as a witness due to the lost recording, the State pointed out that both Detective Graham and Nelson were available to be cross-examined. The trial court agreed and denied Chisem's motion.
¶41 Chisem argues that the trial court did not make the proper factual findings to support a decision that the State had demonstrated "good cause" for not turning over the recording. However, a proper inquiry must first determine whether a discovery violation has occurred. State v. DeLao , 2002 WI 49, ¶¶14-15, 252 Wis. 2d 289, 643 N.W.2d 480.
¶42 "As a general rule, the discovery to which a criminal defendant is entitled is limited to constitutional and statutory requirements." Id. , ¶49. The statute relating to discovery, WIS. STAT. § 971.23(1), outlines the requirements of the State with regard to disclosure. Specifically, the statute requires the State to disclose, among other things, any written or recorded statements "if it is within the possession, custody or control of the [S]tate[.]" Sec. 971.23(1). These discovery obligations of the State "may extend to information in the possession of law enforcement agencies." DeLao , 252 Wis. 2d 289, ¶21. Statutory interpretation is a question of law that we review de novo. Id. , ¶14.
¶43 In this case, although Detective Graham initially made a recording of Nelson's statement, he lost it; therefore, the recording was no longer in his possession. "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." Fond Du Lac Cty. v. Town of Rosendale , 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989). WISCONSIN STAT. § 971.23(1) does not require the State to turn over discovery materials that it does not have in its possession. See id. Thus, there was no discovery violation here.
¶44 Furthermore, Detective Graham prepared a report regarding his interview of Nelson, and turned that over to the prosecutor, who in turn provided it to Chisem prior to trial. Chisem was then afforded the opportunity to cross-examine Nelson about his statement, as well as Detective Graham regarding the lost recording. Moreover, we have already concluded that the admission of Davis's statements to Nelson was harmless error. For all of these reasons, Chisem's argument fails.
¶45 In sum, we conclude that the trial court did not erroneously exercise its discretion in denying Chisem's motion for severance. Therefore, we affirm his judgment of conviction as well as the denial of his postconviction motion.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

To avoid confusion with the codefendant, we will subsequently refer to this witness by his first name.

Chisem also included a claim of juror misconduct in his postconviction motion, but did not present this issue on appeal. We therefore deem the claim to be abandoned. See Cosio v. Medical Coll. of Wis., Inc. , 139 Wis. 2d 241, 242-43, 407 N.W.2d 302 (Ct. App. 1987).

Chisem cites Smith v. Bray , 681 F.3d 888 (7th Cir. 2012), in support of his argument that the line of evidence regarding Davis's motive should not have been admitted. This case is inapplicable to the facts here; Smith was an employment discrimination case, rather than a criminal case, so it had different standards for evidentiary analysis. Furthermore, decisions of the Seventh Circuit are not binding on this court.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.