COURT OF APPEALS
DECISION
DATED AND FILED

August 24, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2012-CR**

Cir. Ct. No. **2021CM202**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHAEL ROSS STRAIGHT,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed*.

¶1 KLOPPENBURG, P.J.[1] Michael Ross Straight appeals the judgment convicting him, after a jury trial, of disorderly conduct and the order

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

denying his motion for postconviction relief. In that motion, Straight argued that his trial counsel was constitutionally ineffective for failing to request a self-defense jury instruction on the disorderly conduct charge. Straight renews that argument on appeal. I reject Straight's argument because he has failed to show that trial counsel performed deficiently. Accordingly, I affirm.

## BACKGROUND

¶2 The State charged Straight with misdemeanor battery and disorderly conduct, both as domestic abuse and as a repeater, arising from an altercation with A.B.[2] The case proceeded to a jury trial, at which the following persons testified: A.B.; two of Straight's friends who witnessed the altercation; two officers who responded to and investigated the altercation; and Straight.

¶3 A.B. testified that Straight had helped her through a tough time after her husband died and saved her life, and that she remembered nothing about the altercation.

¶4 The testimony at trial by Straight and the remaining witnesses differed as to certain details of the altercation, but those details do not matter to the analysis of the issue on appeal. The following summary of the altercation is consistent with their testimony at trial. The altercation began when A.B. got out of her car and, holding a machete, approached Straight. Straight thought that he

---

[2] To protect the dignity and privacy of the victim, we refer to her as A.B., using initials that do not correspond to her real name. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

The State also charged Straight with misdemeanor disorderly conduct arising from a separate incident involving a person other than A.B. The jury acquitted Straight of that charge and the parties do not on appeal raise any issue regarding that charge. Accordingly, I do not present evidence regarding it or further address it.

was going to be severely harmed and feared for his life. Straight grabbed A.B., knocked her to the ground, took the machete away from her, and straddled her. Straight held the machete over A.B., with the point towards A.B. A friend at the scene yelled at Straight; Straight said, "What are you going to do about it?"; and the friend said "Well, get up." Straight got up, dropped the machete on the ground, and walked away. A.B. grabbed the machete, walked away, got in her car, and drove off.

¶5 Trial counsel requested and obtained a self-defense jury instruction on the battery charge and did not request or obtain a self-defense jury instruction on the disorderly conduct charge. The jury acquitted Straight of battery and convicted him of disorderly conduct.

¶6 Straight filed a motion for postconviction relief alleging that trial counsel was constitutionally ineffective for failing to request a self-defense jury instruction on the disorderly conduct charge. The circuit court held an evidentiary hearing on the motion, at which trial counsel and Straight testified. Counsel testified that he and Straight discussed numerous defenses to the disorderly conduct and agreed to a particular defense that was not self-defense. Counsel testified, "I asserted a defense that I thought was reasonable and appropriate based upon the facts I anticipated."

¶7 Counsel testified as to his reasoning as follows. Counsel testified that self-defense applied through the point at which Straight subdued A.B. and took the machete away from her, because Straight was "entitled to terminate an unlawful interference with his person." Counsel testified that once Straight had A.B. on the ground and disarmed her, "his right to use force has terminated because the unlawful interference with his person has terminated. Anything after

that becomes not termination but retaliation." Counsel testified that, at that point, Straight "had [A.B.] in a position now where he was the aggressor, he had the weapon. And he was threatening her with the weapon. That's retaliation, that's not self-defense." Counsel further testified that the defense raised was that if there was disorderly conduct when Straight "crossed that line [from terminating to retaliating] it's because [A.B.] had provoked the disturbance," and thereby A.B. who committed the disorderly conduct, not Straight.

¶8    The circuit court found that trial counsel's strategy was to argue that when A.B. approached Straight with the machete and Straight grabbed her, knocked her to the ground, and took the machete away from her, Straight was acting in self-defense. The circuit court further found that trial counsel's strategy was to argue that when Straight was straddling A.B. and holding the machete over her, he was no longer acting in self-defense but he was also not committing disorderly conduct because it was A.B. who caused the disturbance and committed disorderly conduct.

¶9    The circuit court explained that: (1) there were potentially three discrete stages of the altercation before it ended—Straight's grabbing A.B., knocking her down on the ground, and taking the machete away from her; Straight's standing over A.B. with the machete; and Straight's statement to the friend who yelled at him; (2) the latter two stages were not defensible as acts of self-defense; and (3) "the best approach to trying to run the table on all three of these was to offer a different defense to [] that … insular pocket in the whole melee that was the basis for the disorderly conduct [charge]." The court implicitly concluded that it was reasonable for counsel to separate the conduct related to the battery—Straight grabbing A.B., knocking her down on the ground and taking the machete away from her—from the conduct related to the disorderly conduct

4

charge—Straight standing over A.B. with the machete and responding defiantly to the friend. The court determined that the latter course of conduct "was not persuasively defensible as an act of self-defense." Thus, the court reasoned that "the best approach" was to offer a different defense to "that … insular pocket in the whole melee that was the basis for the disorderly conduct."

¶10 The circuit court concluded that counsel's strategy was objectively reasonable based on the fact situation at issue and under the circumstances, which included that counsel did not know what the witnesses, particularly A.B., would say, leaving counsel, coming into the trial, "with a moving target." Accordingly, the court concluded that trial counsel's performance was not deficient and denied the motion.

¶11 Straight appeals.

**DISCUSSION**

¶12 The United States Constitution guarantees to criminal defendants the right to effective assistance of counsel. *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To demonstrate that counsel's assistance was ineffective, the defendant must establish both "that counsel's performance was deficient and that the deficient performance was prejudicial." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citing *Strickland*, 466 U.S. at 687). "[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697; *see also Breitzman*, 378 Wis. 2d 431, ¶37 ("If the defendant fails to satisfy either prong [under *Strickland*], we need not consider the other."). The

5

defendant bears the burden on both of these prongs. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶13    I decide this appeal on the deficient performance prong. Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). In other words, professionally competent assistance encompasses a "wide range" of conduct, and a reviewing court starts with the presumption that counsel's assistance fell within that wide range. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* A defendant's burden is to show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

¶14    "We are 'highly deferential' to counsel's decisions, provided they are objectively reasonable and strategic." *State v. Mull*, 2023 WI 26, ¶35, 406 Wis. 2d 491, 987 N.W.2d. 707 (quoting *Breitzman*, 378 Wis. 2d 431, ¶65). "This court will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment." *Breitzman*, 378 Wis. 2d 431, ¶65 (quoting *State v. Domke*, 2011 WI 95, ¶49, 337 Wis. 2d 268, 805 N.W.2d 364) (alteration in original). "On the other hand, it is not enough to merely 'label' counsel's challenged decisions 'a matter of choice and of trial strategy.'" *Mull*, 406 Wis. 2d 491, ¶36 (quoting *State v. Felton*, 110

Wis. 2d 485, 502, 329 N.W.2d 161 (1983)). "Rather, we examine trial counsel's choices 'in the context of the circumstances as they existed at the time [counsel] made [counsel's] decisions.'" *Mull*, 406 Wis. 2d 491, ¶36 (quoting *State v. Pico*, 2018 WI 66, ¶22, 382 Wis. 2d 273, 924 N.W.2d 95). Counsel's choice of strategy must be "objectively reasonable." *Mull*, 406 Wis. 2d 491, ¶35.

¶15 "Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact." *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. The circuit court's findings of fact will not be disturbed unless those findings are clearly erroneous. *Id.* "'The circumstances of the case and … counsel's conduct and strategy' are considered findings of fact." *Id.* (citation omitted). However, whether those facts constitute deficient performance is a question of law that this court reviews independently. *State v. Tulley*, 2001 WI App 236, ¶5, 248 Wis. 2d 505, 635 N.W.2d 807.

## Analysis

¶16 Straight begins by asserting that self-defense is available when a defendant is charged with disorderly conduct. I assume, without deciding, that this proposition is correct. However, I conclude that Straight fails to show that his trial counsel provided constitutionally ineffective assistance when counsel failed to request a self-defense jury instruction on the disorderly conduct charge here.

¶17 Straight argues that it was not an objectively reasonable strategy for trial counsel to defend against the disorderly conduct charge based on A.B., not Straight, causing the disturbance rather than based on self-defense. Straight argues that counsel's decision not to pursue self-defense was unreasonable for two reasons: (1) self-defense applied to both the battery and disorderly conduct charges, which stemmed from the same course of conduct; and (2) even if A.B.

was disorderly and caused the disturbance, that was not a legal defense to disorderly conduct because more than one person can be disorderly at the same time. I address and reject Straight's arguments regarding each of these reasons in turn.

### A. Whether self-defense applied to both charges

¶18    As summarized above, Straight's trial counsel testified at length and in detail about how he considered the defenses to the charged crimes, including self-defense, and determined that self-defense would not "carry the day" as to the disorderly conduct charge. Counsel also testified that, while the defense he chose and self-defense may not be mutually exclusive, he learned from his experience that presenting alternative defenses "doesn't work with juries."

¶19    Straight argues, essentially, that counsel made the wrong decision. Straight argues that the actions he took after he got the machete away from A.B. supported self-defense because he was preventing her from continuing her attack, especially since he knew that A.B. possessed additional knives. However, Straight disregards the reasons counsel articulated for rejecting self-defense as to that conduct in the course of the altercation at issue. Because Straight fails to show that counsel's decision was without reason or judgment, this court will not "second-guess" counsel's trial strategy. *See **Breitzman***, 378 Wis. 2d 431, ¶65; *see also **State v. Nielsen***, 2001 WI App 192, ¶26, 247 Wis. 2d 466, 634 N.W.2d 32 ("We will not second guess trial counsel's selection of trial tactics or strategies in the face of alternatives that [counsel] has considered.").

### B. Whether the defense pursued was legally invalid

¶20 Straight also argues that the defense that trial counsel pursued—that it was A.B., not Straight, who caused or provoked the disturbance that comprised the disorderly conduct—is invalid as to the disorderly conduct charge. The circuit court rejected this argument. The court quoted the jury instruction, which states: "It is not necessary that an actual disturbance must have resulted from the Defendant's conduct. The law requires only that the conduct be of a type that tends to cause or provoke a disturbance under the circumstances as they then existed." *See* WIS JI—CRIMINAL 1900. The court concluded that arguing that Straight did not cause the disturbance but A.B. did was a legitimate defense to the disorderly conduct charge.

¶21 Straight's argument is essentially that counsel made the wrong decision because multiple people can be guilty of disorderly conduct at the same time, by threatening or causing a disturbance. However, while Straight may disagree with counsel's decision, he fails to show that it was "legally invalid" for counsel to argue that, under these circumstances, only A.B. caused or provoked the disturbance. Straight's attempt to convert a decision applying the law to the facts into a decision inconsistent with the law fails.

¶22 Straight faults counsel for erroneously basing his decision not to raise self-defense based on his "sophisticated view of the facts," rather than on the law. However, Straight misrepresents counsel's testimony. In context, it is clear that counsel was saying that the analysis of "several options" of defenses to choose from was "more sophisticated than the record shows." Counsel continued, "In self-defense you're entitled to terminate an unlawful interference with your

person. But you're not entitled to retaliate once you've terminated the unlawful interference." In this case, counsel explained,

> you've got Mr. Straight terminating the unlawful interference with his person, where he now has [A.B.] on the ground and he's disarmed her. At that point, his right to use force has terminated because the unlawful interference with his person has terminated. Anything after that becomes not termination but retaliation. And there are articles that are clear on that when you cross the line from being the defender to the aggressor. And he had crossed that line. That's why we didn't assert self-defense. We asserted that when he had crossed that line it's because [A.B.] had provoked the disturbance.

¶23 Counsel explained why he did not consider Straight's actions before "crossing the line" as disorderly conduct. Counsel testified that a "more sophisticated view" of the evidence of Straight's actions after he disarmed and immobilized A.B. was that the conduct described by one of the witnesses, that Straight "put a machete up to the throat of [A.B.]," was not self-defense precisely because she had been disarmed and he had her down on the ground. In other words, counsel determined that the self-defense that applied to his conduct to that point no longer applied because at that point "he was the aggressor" and "his behavior was disorderly. It wasn't privileged. It's a different behavior that takes place after the self-defense takes place. The self-defense doesn't mean that you can take someone's weapon away and retaliate."

¶24 Straight argues that there are other views of the evidence that could support self-defense, which counsel did not consider. For example, it could have been argued that, when Straight straddled A.B. and held the machete over her, he was threatening her to stop any continued attack, knowing that she possessed other knives. Alternatively, it could have been argued that he was threatening A.B. to stop her from trying to get the machete back. However, Straight points to no

10

testimony showing that counsel did not consider these and other views of the evidence "in light of the self-defense instruction." To the contrary, counsel testified that he considered a variety of possible defenses and explained why he decided that, under any view of the evidence, self-defense would not work after Straight terminated the attack. Straight may disagree with that decision as a matter of strategy, but he fails to show that it was legally invalid.

¶25 Straight argues that, despite counsel's argument that it was not Straight but A.B. who provoked the disturbance and behaved in a disorderly way, "there was nothing preventing the jury from concluding that Mr. Straight's actions also amounted to disorderly conduct." However, it could also be argued that, had counsel argued that Straight was engaging in self-defense when he held the machete over A.B. after knocking her to the ground, taking the machete away from her, and straddling her, nothing prevented the jury from concluding that self-defense no longer applied. Again, Straight disagrees with counsel's decision but fails to show that it was legally invalid.

¶26 Straight argues that counsel "muddied the waters by making a pseudo self-defense argument" in his closing remarks, suggesting that Straight did not commit disorderly conduct because he took the actions that led to the disorderly conduct charge in self-defense. However, Straight takes counsel's remarks out of context. After telling the jury that Straight was acting in self-defense as to the battery charge, counsel continued:

> As far as the disorderly conduct, it's [A.B.] who's behaving in a disorderly way, who is provoking this disturbance, not Mr. Straight. So, he is entitled to defend himself, certainly, and those actions are privileged under Wisconsin law.
>
> And I would submit, ladies and gentlemen, that his actions weren't disorderly, that [A.B.'s] actions were. In

11

> fact, Mr. Straight committed no crime in what he was doing. Therefore, you should not convict him of a crime in that regard.

Read together with the remarks that preceded these remarks, it is clear that counsel was reiterating the self-defense basis for Straight's innocence of the battery charge, and then turning to the disorderly conduct charge and telling the jury that it was A.B.'s, not Straight's, conduct that was disorderly. As the circuit court stated, counsel "could have said that better" and been more precise, but his overall point was clear—that Straight should be found not guilty of everything and that the defense to the disorderly conduct charge was that it was not Straight who committed the disorderly conduct.

¶27 Straight also argues that, by pursuing a legally invalid defense, counsel "overrode [] Straight's objective to maintain his innocence." Straight appears to be referring to his testimony at the postconviction motion hearing that he believed that he was claiming self-defense on the disorderly conduct charge. In the course of ruling on the ineffective assistance of counsel claim before it, the circuit court noted that it is particularly challenging when the client disagrees with counsel's strategic decision related to the theory of defense, but that "in the end [that strategic decision] is the attorney's call." Again, while Straight disagrees

with counsel's strategic decision, this argument fails given my rejection of its premise, that the strategic decision that counsel made was legally invalid.[3]

¶28    In sum, Straight fails to show that trial counsel performed deficiently in failing to request a self-defense jury instruction as to the disorderly conduct charge.

**CONCLUSION**

¶29    For the reasons stated above, I affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[3] On appeal, Straight repackages this claim as an argument that trial counsel "violated [] Straight's Sixth Amendment right to choose the objective of his defense when he overrode [] Straight's desire to maintain his innocence as to the disorderly conduct charge" by arguing a legally invalid defense. However, as explained in the text, Straight fails to show that the defense argued by counsel was legally invalid. Moreover, Straight did not raise this claim in the circuit court and, therefore, I do not consider it further. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court are forfeited, and supporting the proposition that appellate courts generally do not address forfeited issues).